## ROSEMARIE SPATAFORE *v.* YALE UNIVERSITY (15496)

Callahan, C. J., and Borden, Katz, and Palmer, Js.[1]

[1] After oral argument in this case, Justice McDonald recused himself and the parties have agreed to have this appeal decided by a panel of this court consisting of the four remaining justices who heard the appeal.

Argued October 30—officially released December 3, 1996

*Gerald P. Dwyer*, for the appellant (plaintiff).

*John M. Letizia*, with whom, on the brief, was *Andrew A. Cohen*, for the appellee (defendant).

KATZ, J. The dispositive issue in this appeal is whether an employee who, during her unpaid lunch break, sustained an injury while walking back to work from a union meeting, has a compensable injury under the Workers' Compensation Act (act).[2] We conclude that she does not.

The following facts are undisputed. The plaintiff, Rosemarie Spatafore, is a clerical employee of the defendant, Yale University, and a union representative for Local 34 of the Federation of University Employees, Hotel and Restaurant Employees International. On August 24, 1992, the plaintiff was returning to work after having attended a weekly union meeting during her unpaid lunch break when she fell on a sidewalk that was owned by Yale-New Haven Hospital, Inc., and injured her left arm. The plaintiff worked at the defendant's office of professional services in the Farnham

---

[2] General Statutes §§ 31-275 through 31-355a.

building, which is located between Howard and Cedar Streets in the Yale University Hospital complex. The union meeting was held in the defendant's Sterling cafeteria on Cedar Street. The meeting was a weekly meeting held for union representatives throughout the area and was not a special grievance meeting or negotiating session. The defendant, as an employer, was not permitted to attend the meeting, and the plaintiff's attendance at the meeting was voluntary.

Pursuant to General Statutes § 31-294c (a),[3] the plaintiff submitted a claim for workers' compensation benefits. Thereafter, on August 30, 1993, pursuant to General Statutes § 31-297,[4] workers' compensation commis-

[3] General Statutes § 31-294c (a) provides: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury, provided, if death has resulted within two years from the date of the accident or first manifestation of a symptom of the occupational disease, a dependent or dependents, or the legal representative of the deceased employee, may make claim for compensation within the two-year period or within one year from the date of death, whichever is later. Notice of a claim for compensation may be given to the employer or any commissioner and shall state, in simple language, the date and place of the accident and the nature of the injury resulting from the accident, or the date of the first manifestation of a symptom of the occupational disease and the nature of the disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. An employee of the state shall send a copy of the notice to the commissioner of administrative services. As used in this section, 'manifestation of a symptom' means manifestation to an employee claiming compensation, or to some other person standing in such relation to him that the knowledge of the person would be imputed to him, in a manner that is or should be recognized by him as symptomatic of the occupational disease for which compensation is claimed."

[4] General Statutes § 31-297 provides: "Hearing of claims. If an employer and his injured employee, or his legal representative, as the case may be, fail to reach an agreement in regard to compensation under the provisions of this chapter, either party may notify the commissioner of the failure. Upon such notice, or upon the knowledge that an agreement has not been reached in a case in which a right to compensation may exist, the commissioner shall schedule an early hearing upon the matter, giving both parties

sioner John A. Arcudi (commissioner) held a hearing during which the collective bargaining agreement (agreement) between the defendant employer and the union was introduced. On March 30, 1994, the commissioner issued a written finding and award in which he found that, according to the agreement, the plaintiff was not permitted to engage in union activities during work time and that the union was permitted to make reasonable use of the defendant's facilities. The commissioner further found that the plaintiff had sustained an injury to her left upper extremity when she tripped on a crack in the sidewalk while returning to her office in the Yale-New Haven Hospital complex in New Haven, following a union meeting at Sterling Hall, a Yale University Medical School building. The commissioner further found that the route the plaintiff had taken from the meeting to her office was direct.[5] Following the articula-

notice of time and place not less than ten days prior to the scheduled date; provided the commissioner may, on finding an emergency to exist, give such notice as he finds reasonable under the circumstances. If no agreement has been reached within sixty days after the date notice of claim for compensation was received by the commissioner, as provided in section 31-294c, a formal hearing shall be scheduled on the claim and held within thirty days after the end of the sixty-day period, except that if an earlier hearing date has previously been scheduled, the earlier date shall prevail. Hearings shall be held, if practicable, in the town in which the injured employee resides; or, if it is not practicable to hold a hearing in the town, in any other convenient place that the commissioner may prescribe. Sufficient notice of the hearing may be given to the parties in interest by a brief written statement in ordinary terms of the date, place and nature of the injury upon which the claim for compensation is based."

[5] The commissioner's findings provided in relevant part:

"1. Pursuant to proper notice to all parties, a hearing in the above-captioned matter was held before the undersigned at the New Haven office of the Workers' Compensation Commission on August 30, 1993, and continued to November 19, 1993, for the submission of written argument.

"2. Claimant, on Monday, August 24, 1992, was an employee of the Office of Professional Services, Yale University.

"3. She worked in its Farnham Building, No. 37, in the Yale-New Haven Hospital complex in New Haven.

"4. Claimant was a Union Representative for Local 34, Federation of University Employees, AFL-CIO, the collective bargaining representative for clerical and technical employees of the University.

tion of these facts, the commissioner determined that the plaintiff's attendance at the union meeting on August 24, 1992, had been for the mutual benefit of the plaintiff and the defendant, that the plaintiff's "going and coming from the meeting was therefore part of her employment or an activity incidental to it," and that, consequently, her injury was compensable under the act and she was entitled to all indemnity and medical benefits thereunder.

Thereafter, on April 7, 1994, pursuant to General Statutes § 31-301,[6] the defendant filed a petition for review

"5. Union staff members who were Union Representatives could not engage in union activities during working time under the collective bargaining agreement between the University and the Union.

"6. Under the same collective bargaining agreement the Union was permitted to make reasonable use of University facilities for meetings.

"7. On Monday, August 24, 1992, claimant, in her capacity as Union Representative, attended a Union meeting with other Union Representatives during the noon luncheon break.

"8. The meeting was held in Sterling Hall, a Yale University Medical School building.

"9. On her way back from the Union meeting to the basement office in the Farnham Building claimant tripped over a crack in the sidewalk, injuring her left upper extremity.

"10. The route which claimant took that day from Sterling Hall to the Farnham Building was a direct route from one Yale building to another.

"11. She was treated for the injury by a Dr. VanRajin, M.D., at the Yale University Health Plan; by Dr. Allen Goodman, M.D., a New Haven orthopedist; Dr. Scott Wolfe, M.D., an orthopedist; and Dr. Richard A. Bernstein, M.D., an orthopedist. . . ."

[6] General Statutes § 31-301 provides: "Appeals to the Compensation Review Board. Payment of award during pendency of appeal. (a) At any time within ten days after entry of an award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according to the provisions of section 31-299b, either party may appeal therefrom to the Compensation Review Board by filing in the office of the commissioner from which the award or the decision on a motion originated an appeal petition and five copies thereof. The commissioner within three days thereafter shall mail the petition and three copies thereof to the chief of the Compensation Review Board and a copy thereof to the adverse party or parties.

"(b) The appeal shall be heard by the Compensation Review Board as provided in section 31-280b. The Compensation Review Board shall hear

with the compensation review board (board) together with a motion for extension of time to file reasons for appeal. The board acknowledged the appeal, assigned it a case number, and thereby asserted its jurisdiction over the matter. The defendant also filed with the commissioner a motion to correct the finding, asking that

the appeal on the record of the hearing before the commissioner, provided, if it is shown to the satisfaction of the board that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the Compensation Review Board may hear additional evidence or testimony.

"(c) Upon the final determination of the appeal by the Compensation Review Board, but no later than one year after the date the appeal petition was filed, the Compensation Review Board shall issue its decision, affirming, modifying or reversing the decision of the commissioner. The decision of the Compensation Review Board shall include its findings, conclusions of law and award.

"(d) When any appeal is pending, and it appears to the Compensation Review Board that any part of the award appealed from is not affected by the issues raised by the appeal, the Compensation Review Board may, on motion or of its own motion, render a judgment directing compliance with any portion of the award not affected by the appeal; or if the only issue raised by the appeal is the amount of the average weekly wage for the purpose of determining the amount of compensation, as provided in section 31-310, the commissioner shall, on motion of the claimant, direct the payment of the portion of the compensation payable under his award that is not in dispute, if any, pending final adjudication of the disputed portion thereof. In all appeals in which one of the parties is not represented by counsel, and in which the party taking the appeal does not prosecute the case within a reasonable time from the date of appeal, the Compensation Review Board may, of its own motion, affirm, reverse or modify the award.

"(e) When an appeal is taken to the Compensation Review Board, the chief clerk thereof shall notify the commissioner from whose award the appeal was taken, in writing, of any action of the Compensation Review Board thereon and of the final disposition of the appeal, whether by judgment, withdrawal or otherwise, and shall upon the decision of the appeal, furnish the commissioner with a copy of the decision. Whenever any appeal is pending, if it appears to the Compensation Review Board that justice so requires, the Compensation Review Board shall order a certified copy of the evidence for the use of the employer, the employee or both, and the certified copy shall be made a part of the record on the appeal. The procedure in appealing from an award of the commissioner shall be the same as the procedure employed in an appeal from the superior court to the supreme court, where applicable. The chairman of the Workers' Compensation Commission shall adopt regulations, in accordance with the provisions of chapter

the commissioner add certain facts to his decision.[7] Neither the defendant nor the plaintiff requested an opportunity to submit additional evidence or to conduct

54, to establish rules, methods of procedure and forms as the chairman deems expedient for the purposes of this chapter.

"(f) During the pendency of any appeal of an award made pursuant to this chapter, the claimant shall receive all compensation and medical treatment payable under the terms of the award to the extent the compensation and medical treatment are not being paid by any health insurer or by any insurer or employer who has been ordered, pursuant to the provisions of subsection (a) of this section, to pay a portion of the award. The compensation and medical treatment shall be paid from the Second Injury Fund pursuant to section 31-354.

"(g) If, upon completion of the appeal process, the claimant is found to have a compensable injury, the employer or insurer shall be responsible for payment of the compensation and shall reimburse the Second Injury Fund for all sums previously expended, if any, on the claim pursuant to subsection (f) and this subsection, plus interest at the rate of ten per cent per annum. If the final adjudication results in the denial of compensation to the claimant, and he has previously received compensation on the claim pursuant to subsection (f) and this subsection, the claimant shall reimburse the Second Injury Fund for all sums previously expended, plus interest at the rate of ten per cent per annum. Upon any such denial of compensation, the commissioner who originally heard the case or his successor shall conduct a hearing to determine the repayment schedule for the claimant."

[7] The defendant's motion to correct provided in relevant part:

"Correction Requested: Please add the following language to Paragraph 7: The Respondent permitted the employees to take their lunch break whenever the employees preferred. The meeting was during Claimant's unpaid lunch break. The Claimant's attendance at the union representative meeting was voluntary and not required by her employer. . . .

"Correction Requested: [Paragraph 8] Please change the location of the meeting from 'Sterling Hall' to the 'Harkness Dining Hall.' . . .

"Correction Requested: Please add the following language to Paragraph 9: Claimant's injury occurred on a sidewalk outside the Hunter Building which is under the ownership and control of Yale-New Haven Hospital and not Yale University. . . .

"Correction Requested: [Respondent] request[s] that the following language be substituted for the present language in Paragraph 10: The Claimant chose to return from her unpaid lunch break after voluntarily attending a union representative meeting in Harkness Dining Hall and tripped and fell outside the Hunter Building which is under the ownership and control of Yale-New Haven Hospital and not Yale University. . . .

"Correction Requested: The Respondent requests that the following language be substituted for the present language in Paragraph 12: The Claimant's voluntary attendance at the union representative meeting and her agreement

further evidentiary hearings. The board allowed the defendant two weeks from the commissioner's ruling on the motion to correct to file its reasons for the appeal.

On May 2, 1994, the commissioner withdrew his finding and award and ordered further evidentiary hearings regarding the ownership of the facilities involved, the relationship of the defendant to the union, and the relationship of Yale University School of Medicine to Yale-New Haven Hospital, Inc. On August 18, 1994, before the commissioner, the defendant objected to any further hearings or submission of further evidence, claiming that because the case was pending before the board, the commissioner lacked jurisdiction to withdraw his decision and to order further evidentiary hearings on factual issues that had been covered. The hearing, however, proceeded over the defendant's objection.

to be a union representative was her own choosing and for the sole benefit of the union and union employees. The Employer did not require nor was it part of Claimant's job responsibilities or duties to be a union representative or attend union representative meetings. The meeting attended by the Claimant was for union representatives and not for all union employees. The union meeting did not include attendance by any representative of the Employer. The Claimant did not present evidence to demonstrate that [the] meeting was in any manner for the mutual benefit of the Employer or the Employer's non-union employees. . . .

"Correction Requested: The Respondent requests that the following language be substituted for the present language in Paragraph 13: Claimant's voluntary attendance at a union representative meeting on her unpaid lunch hour does not constitute an injury arising out of and in the course of her employment. The injury occurred on a sidewalk area outside the Hunter Building which is under the ownership and control of Yale-New Haven Hospital and not Yale University. Attendance at the union meeting was not required by the employer and did not fulfill her duties of employment or anything incidental to her employment."

The plaintiff agreed that the commissioner could properly correct paragraphs eight and nine as requested by the defendant. She objected to the requested corrections to paragraphs seven, ten, twelve and thirteen. At oral argument, however, the plaintiff agreed that the locus of the injury was off the premises owned or leased by the defendant and that Yale-New Haven Hospital, Inc., an entity separate and distinct from the defendant, owned the sidewalk where the injury occurred, as well as the Farnham building where the plaintiff worked.

Despite the events before the commissioner, the board, having asserted jurisdiction over the matter, denied a jointly filed motion for a continuance, determined that no further evidence was necessary and set a briefing schedule. On September 14, 1995, the board issued its opinion. It first concluded that the defendant's motion to correct, not having been expressly ruled on by the commissioner, was deemed denied. According to the board, the failure to act on the motion to correct was insignificant because, taking the facts as originally found, the claimant had not suffered a compensable injury. The board found no evidence to support the commissioner's determination that the plaintiff's injuries arose out of and had been suffered in the course of her employment. Specifically, the board found no evidence to support the commissioner's conclusion that the plaintiff's attendance at the union meeting had been for the mutual benefit of the plaintiff and the defendant, particularly because the defendant had had no involvement with the union meeting and the plaintiff had been on an unpaid lunch break while at the meeting. The board concluded that "independent evidence of a benefit to the employer regarding union activity must be shown before a trial commissioner may conclude that such activity benefits an employer." Moreover, the board concluded that because the plaintiff's injuries undisputedly did not occur on the defendant's property, the plaintiff would be required to demonstrate that her injury resulted "from some peculiar danger involved in the course taken or means used by [her] in coming to or going from work [and] it must appear that such danger was a risk annexed to the employment by the employer's contemplating and acquiescing in the use thereof by the employee." (Internal quotation marks omitted.) The board concluded that because the plain-

tiff had not met that burden, her injuries were not compensable under the act. This appeal followed.[8]

On appeal the plaintiff claims that the board: (1) exercised an improper standard of review; (2) improperly overturned the commissioner's factual findings that the plaintiff's attendance at the union meeting was of mutual benefit to the plaintiff and the defendant and that the plaintiff's injury was compensable; and (3) improperly usurped the commissioner's function.[9] We are not persuaded.

It is well settled that, because the purpose of the act is to compensate employees for injuries without fault by imposing a form of strict liability on employers, to recover for an injury under the act a plaintiff must prove that the injury is causally connected to the employment. To establish a causal connection, a plaintiff must demonstrate that the claimed injury (1) "arose out of the employment," and (2) "in the course of the employ-

---

[8] The plaintiff appealed from the decision of the board to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[9] At oral argument, the plaintiff raised the issue of whether it was proper for the board to review the findings of the commissioner when, after the appeal to the board had been timely filed, the commissioner had withdrawn the award to the plaintiff, pending new hearings, but had not yet responded to the defendant's request for corrections to the earlier decision. The plaintiff conceded, however, that the evidence before the board as to whether her injury was within the scope of her employment so as to be compensable would not have differed had there been a new hearing before the commissioner. That being the case, the end result of a remand by this court would be that the commissioner's ruling would be on the same evidence as before and any review by the board would be on the same evidence as before. Therefore, because there was an appealable decision by the commissioner at the time the defendant's appeal to the board was filed, we conclude that the board's review of that decision was not improper even though the later actions of the commissioner muddied the procedural waters. To hold otherwise would be to elevate form over substance, which we are loath to do. See *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 237 Conn. 114, 121, 676 A.2d 825 (1996); *Newman* v. *Newman*, 235 Conn. 82, 98–99, 663 A.2d 980 (1995); *State* v. *Day*, 233 Conn. 813, 832, 661 A.2d 539 (1995).

ment." *Bakelaar* v. *West Haven,* 193 Conn. 59, 67, 475 A.2d 283 (1984); *McNamara* v. *Hamden,* 176 Conn. 547, 556, 398 A.2d 1161 (1979). "Proof that the injury arose out of the employment relates to the time, place and circumstances of the injury. *McNamara* v. *Hamden,* supra, 550. Proof that the injury occurred in the course of the employment means that the injury must occur (a) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it. [Id.], 550–51; *Pagani* v. *BT II, Limited Partnership,* 24 Conn. App. 739, 745–46, 592 A.2d 397, cert. dismissed, 220 Conn. 902, 593 A.2d 968 (1991)." (Internal quotation marks omitted.) *Crochiere* v. *Board of Education,* 227 Conn. 333, 349–50, 630 A.2d 1027 (1993).

The determination of whether an injury arose out of and in the course of employment is a question of fact for the commissioner. *Fair* v. *People's Savings Bank,* 207 Conn. 535, 539, 542 A.2d 1118 (1988). A party aggrieved by a commissioner's decision to grant or deny an award may appeal to the board pursuant to § 31-301, which provides in pertinent part: "(a) At any time within ten days after entry of an award by the commissioner . . . either party may appeal therefrom to the Compensation Review Board . . . . (b) The appeal shall be heard by the Compensation Review Board . . . . The Compensation Review Board shall hear the appeal on the record of the hearing before the commissioner, provided, if it is shown to the satisfaction of the board that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the Compensation Review Board may hear additional evidence or testimony. (c) Upon the final determination of the appeal by the Compensation Review Board . . . [it] shall issue its decision, affirming, modifying or

reversing the decision of the commissioner. The decision of the Compensation Review Board shall include its findings, conclusions of law and award. . . ."[10] "[T]he [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [The board] is obliged to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citations omitted; internal quotation marks omitted.) *Fair* v. *People's Savings Bank*, supra, 538–39.

"To the extent that we have articulated a standard for reviewing a determination by a commissioner that an injury arose out of the employment, we have treated this issue as factual in nature and, therefore, have accorded the commissioner's conclusion the same deference as that given to similar conclusions of a trial judge or jury on the issue of proximate cause. A finding of a fact of this character [whether the injury arose out of the employment] is the finding of a primary fact. . . . This ordinarily and in this case presents a question

[10] Section 31-301-8 of the Regulations of Connecticut State Agencies describes the treatment of appeals from a compensation commissioner: "Function of Compensation Review Division. Ordinarily, appeals are heard by the compensation review division upon the certified copy of the record filed by the commissioner. In such cases the division will not retry the facts or hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose of determining whether the finding should be corrected or whether there was any evidence to support in law the conclusion reached. It cannot review the conclusions of the commissioner when these depend upon the weight of the evidence and the credibility of witnesses. Its power in the corrections of the finding of the commissioner is analogous to, and its method of correcting the finding similar to the power and method of the Supreme Court in correcting the findings of the trial court."

Number 91-339 of the 1991 Public Acts changed "compensation review division" to "compensation review board," effective July 1, 1991.

for the determination of the commissioner and we have no intention of usurping his function. . . . This rule leads to the conclusion that unless the case lies clearly on the one side or the other the question whether an employee has so departed from his employment that his injury did not arise out of it is one of fact. . . . The [board] is, therefore, bound by the findings of fact made by the commissioner, unless additions, corrections or modifications of findings of fact are made pursuant to the narrow provision set forth in § 31-301 [b]."[11] (Citations omitted; internal quotation marks omitted.) *Crochiere* v. *Board of Education*, supra, 227 Conn. 347–48.

The plaintiff argues that, although the board acknowledged its limited scope of review, it nevertheless disregarded the substantial body of evidence supporting the commissioner's award. In response, the defendant argues that the board did not find new facts or disregard the evidence supporting the plaintiff's claim. The defendant claims, rather, that the board determined that the conclusions the commissioner had made, based upon the facts he properly had found, were not reasonably sound.[12] We agree with the defendant.

It is undisputed that the injury to the plaintiff occurred on property that was owned by someone other than her employer while she was returning to work from a union meeting that she had attended during her unpaid lunch break. It is generally recognized that "[where] the employee has a definite place and time of

[11] This provision is not relevant to this case because the board did not receive additional testimony or evidence.

[12] The board properly accepted the commissioner's subsidiary findings that the plaintiff was on her unpaid lunch break when she attended the regular weekly union meeting, that employer attendance at such meetings was forbidden during working time under the collective bargaining agreement, and that the agreement allowed the union to make reasonable use of the defendant's facilities for meetings. Additionally, the parties agree that the plaintiff fell on property that was owned by an entity other than her employer.

work, and time of work does not include the lunch hour, the trip away from and back to the premises for the purpose of getting lunch is indistinguishable in principle from the trip at the beginning and end of the work day, and should be governed by the same rules and exceptions. . . . [Thus], when the employee with fixed time and place of work has left the premises for lunch, he is outside of the course of his employment if he falls, is struck by an automobile crossing the street, or is otherwise injured." 1 A. Larson & L. Larson, Workmen's Compensation (1996) § 15.51, pp. 4-158 through 4-162; see also *McKiernan* v. *New Haven*, 151 Conn. 496, 498–99, 199 A.2d 695 (1964) ("[a] principal reason for this rule is that employment ordinarily does not commence until the claimant has reached the employer's premises, and consequently an injury sustained prior to that time would ordinarily not occur in the course of the employment so as to be compensable").

Because in these "going and coming" cases the injury has occurred to an employee acting outside the place and period of employment, in situations *tangential* to employment "the need arose to reach out for the additional element of employer benefit to make up for the fact that employees going to or coming from work do not satisfy both of the first two course-of-employment requirements, place and period of employment." *McNamara* v. *Hamden,* supra, 176 Conn. 553. Consequently, when an employee has sustained an injury while traveling to and from work, but there also existed some work related recreational or social aspects, as in traveling to a union sponsored picnic, the benefit test has been applied and we have held that that employee could fall within the act's coverage by demonstrating that the activity that took him outside the place and period of employment had been for the employer's benefit. *Williams* v. *State,* 152 Conn. 692, 211 A.2d 700 (1965); see *Smith* v. *Seamless Rubber Co.,* 111 Conn. 365, 368–69,

150 A. 110 (1930). This "independently convincing association with the employment" is needed in order to "overcome the initial presumption of disassociation with the employment established by the time and place factors."[13] 1A A. Larson & L. Larson, supra, § 22.11, p. 5-92.

Traditionally, attendance at a union meeting was viewed as a benefit solely for the employee with no concomitant benefit to the employer and therefore did not fall within the course of employment. Id., § 27.33 (a), p. 5-410. Even when the union meeting was held on the employer's premises, the activity was deemed personal and, therefore, compensation to the employee injured while at the union meeting was denied. See, e.g., *Pacific Indemnity Co.* v. *Industrial Accident Commission*, 27 Cal. App. 2d 499, 81 P.2d 572 (1938). Courts denying such claims have reasoned that the purpose of the National Labor Relations Act, 29 U.S.C. § 151 et seq., was "to permit employees to deal at arm's length with their employer and to obtain from the employer concessions which in many instances would have a tendency to increase the employer's overhead and cost of operation. Such purposes, though perfectly justifiable in themselves, cannot be said to be for the benefit or in furtherance of the employer's work." Id., 504.

More recently, courts have held that an activity undertaken by an employee acting in his or her union capacity may simultaneously serve the interests of employee and employer. See *Caterpillar Tractor Co.* v. *Shook*, 313 N.W.2d 503, 507 (Iowa 1981); *Kennedy* v. *Thompson Lumber Co.*, 223 Minn. 277, 280–81, 26 N.W.2d 459

---

[13] Although we have moved beyond a mere employer benefit test to one including employer approval or acquiescence when the employer sanctioned activity regularly occurs on the premises; *McNamara* v. *Hamden*, supra, 176 Conn. 554–55; we have not abandoned the employer benefit test in cases of injury to an employee who was off premises and not within the period of employment.

(1947); *Mikkelsen* v. *N. L. Industries*, 72 N.J. 209, 217, 370 A.2d 5 (1977); *Repco Products Corp.* v. *Workmen's Compensation Appeal Board*, 32 Pa. Commw. 554, 379 A.2d 1089, 1092 (1977). Whether there exists a mutual employer-employee benefit in the employee's union activities depends upon the nature of the particular activity that the employee was performing when injured. *Caterpillar Tractor Co.* v. *Shook*, supra, 507 (compensation awarded to union representative for injury sustained while traveling from activities as chairman of grievance committee to employer's premises where employee was paid for time en route to negotiations); *Mikkelsen* v. *N. L. Industries*, supra, 213 (compensation denied where claimant, acting merely as rank and file member, voted on proposed collective bargaining agreement); *Salierno* v. *Micro Stamping Co.*, 136 N.J. Super. 172, 177, 345 A.2d 342 (1975) (compensation awarded where employee, acting as shop steward, suffered heart attack while negotiating labor contract), aff'd, 72 N.J. 205, 370 A.2d 3 (1977).

In *New England Telephone Co.* v. *Ames*, 124 N.H. 661, 474 A.2d 571 (1984), the New Hampshire Supreme Court found compensable a union representative's injuries sustained while attending a negotiation session between the union and the employer. The court found that although the employee was not actually engaged in the work she had been hired to perform at the time of her injury, she was not precluded from receiving workers' compensation benefits. Id., 663. Rather, the court determined that because the union activity had been of mutual benefit to the employee and employer, the injury had been sustained in the course of her employment and, therefore, was compensable. Id., 663–64. The employee had been negotiating on behalf of the union in an effort to obtain increased wages and benefits from the employer. Id., 664. Because bargaining is an attempt to obtain an advantage over an opponent

at the opponent's own expense, it therefore does not fit easily into the mutual benefit label. Nevertheless, the court noted that "the negotiation of and the agreement on a labor contract are activities of mutual benefit to the employer and employee. The existence of a labor contract plays a significant role in preventing industrial strife and unrest. It also promotes the uninterrupted operation of an enterprise. . . . Such consequences of negotiations are of benefit to the employer." (Citations omitted.) Id. In a separate concurring opinion, Justice Souter, then of the New Hampshire Supreme Court, agreed that the union activity was not merely personal. "If the process of bargaining is . . . a step toward reaching an agreement fostering industrial peace and stability, the mutuality of its benefit is apparent." Id., 665. Justice Souter found additional concrete support for the finding of mutual benefit in the employer's explicit agreement to pay employees when they bargained during normal work hours. Id.

In *Williams* v. *State*, supra, 152 Conn. 692, this court considered whether there was a benefit to the employer from a union sponsored picnic. In confirming the commissioner's finding that the benefit was too remote, the court recognized that "[w]hile the employees of the [state department of labor] were privileged to attend the outing and were given time off from their work without loss of pay if they did attend, there was no compulsion that they do so, and those who exercised the privilege to attend did so voluntarily. The picnic was given by the union in the expectation that it would help them get new members. Attendance at the picnic was not restricted to the employees in the department who belonged to the union. The department extended to its employees a personal privilege to participate in the function, and the mere fact that good union relations might result therefrom is not sufficient to cast upon the state the obligation to compensate the plaintiff for

her injury. *Mulligan* v. *Oakes*, 128 Conn. 488, 491, 23 A.2d 870 [1942]. The plaintiff's accident did not arise out of or in the course of her employment. *McKiernan* v. *New Haven*, [supra, 151 Conn. 498]." *Williams* v. *State*, supra, 693–94.

This case presents the first opportunity for this court to review a claim that a union meeting is of mutual benefit to an employer and an employee. Although the commissioner properly imposed the burden upon the plaintiff to prove this mutual benefit requirement, the board determined that, despite the commissioner's subsidiary findings, there was no support in the record for the ultimate finding that the plaintiff's attendance at the union meeting had been "for the mutual benefit of employer and employee."[14] We agree with the board that the commissioner's inference was unreasonably drawn from the facts in the record and was therefore improper. *Fair* v. *People's Savings Bank*, supra, 207 Conn. 539.

---

[14] It has long been the law that in cases falling within the penumbra of the "coming and going" cases, off-premises injuries are compensable only when they result "from some peculiar danger involved in the course taken or means used by [the injured worker] in coming to or going from work [and] it must appear that such danger was a risk annexed to the employment by the employer's contemplating and acquiescing in the use thereof by the employee." *Drouin* v. *Chelsea Silk Co.*, 122 Conn. 129, 133–34, 187 A. 904 (1936). Although the special hazard exception has been applied to a variety of obstacles, "it was never the intention behind this exception to mark out an off-premises area, merely because it is a normal access route, and then invest it with all the characteristics of the premises for course of employment purposes." 1 A. Larson & L. Larson, supra, § 15.13 (b), pp. 4-37 through 4-38.

Because in the present case the plaintiff's choice of route to and from the meeting, although the most direct path, had been entirely within her discretion, the board concluded that she had not satisfied the special hazard exception. Because we agree with the board's determination that the record did not support a finding of mutual benefit, we need not decide whether, had there been a benefit to the employer in the plaintiff's attendance at the union meeting, the board properly imposed on the plaintiff the additional need to satisfy the exception for special hazards and demonstrate that her travel to and from the meeting had involved a particular "risk annexed to the employment . . . ." *Drouin* v. *Chelsea Silk Co.*, supra, 122 Conn. 134.

The plaintiff cites to the agreement itself to support the commissioner's finding of mutual benefit. Her reliance is misplaced. The agreement allows the union to make reasonable use of campus bulletin boards and campus mail; it provides for the ability to use "flex time" because it is "mutually advantageous"; it requires the defendant to give reasonable consideration to excusing certain employees from work to conduct union business without pay; and it allows the unions to make reasonable use of the defendant's facilities for meetings. The agreement acknowledges that it is in the parties' best interests to develop productivity and to enhance the quality of work, and provides that quarterly meetings will be held to ensure and to promote these goals. Finally, in recognition that it is desirable to resolve grievances, the agreement provides for grievance and arbitration procedures. While these provisions may be laudatory, they are insufficient to establish the requisite mutual benefit. The general desire to increase productivity and enhance employer-employee relations does not create a mutual benefit at every union meeting whenever and wherever held, regardless of the agenda and despite the prohibition of employer attendance. To rely on the goals set forth in the agreement as a basis upon which to find a mutual benefit would establish, in effect, that all injuries sustained by union members during union activities are work-related and, therefore, compensable. That would be a dramatic and unjustifiable expansion of our workers' compensation law.

The plaintiff testified that she was returning from a weekly meeting, held every Monday with all the union representatives throughout the area, when she fell. No agenda for the Monday meeting was introduced into evidence. Grievances were sometimes handled at these meetings, but even if grievances had been discussed at the meeting in question, any such discussion could not have been for resolution, because only union represen-

tatives were in attendance. Moreover, although negotiation and agreement, in general, may indeed be activities of mutual benefit, depending upon the circumstances, there is nothing in the record from which the commissioner could have found that either had occurred at the meeting in issue. Consequently, there was no basis upon which to find that the union activity in issue, other than in the most theoretical sense, had inured to the defendant's benefit. Indeed, had the board sustained the commissioner's finding of mutual benefit, that concept would have been diluted radically.

The decision of the board is affirmed.

In this opinion the other justices concurred.