ROSEMARY KISH *v.* NURSING AND HOME CARE, INC., ET AL.
(SC 15907)

Berdon, Norcott, Palmer, McDonald and Peters, Js.

Argued December 1, 1998—officially released April 6, 1999

*Neil J. Ambrose,* with whom, on the brief, was *Andrew A. Cohen,* for the appellants (defendants).

*Reid J. Parrington,* with whom, on the brief, was *Frank Bonito,* for the appellee (plaintiff).

*Opinion*

BERDON, J. The principal issue in this appeal is whether an employee may recover workers' compensation for an injury that she suffered while performing her job in a manner that did not comply with the letter of her employer's policy. The workers' compensation commissioner (commissioner), the compensation review board (board), and the Appellate Court all determined that the employee was entitled to workers' compensation. We affirm.

The facts are not in dispute, and were well summarized by the Appellate Court. "The plaintiff, Rosemary Kish, is a registered nurse who was a salaried employee of the [defendant].[1] Her responsibilities [consisted of]

---

[1] In this opinion, "the defendant" refers to Nursing and Home Care, Inc., the named defendant in this case. References to "the defendants" include both the named defendant and Connecticut Hospital Association Workers' Compensation Trust.

visiting patients in their homes and overseeing their care. She made decisions concerning patient care and referred her patients to physicians and other specialists. On a normal workday, the plaintiff used her own car to visit patients and began her day by reporting to her employer's main office at 8:30 a.m. She visited an average of five patients a day, worked out of her car, and took lunch when and where she could find the time. She also set her own work schedule and was reimbursed for her mileage. Her workday ended at approximately 4:30 p.m. and she did not return to the main office at the end of each day.

"One of the plaintiff's patients was an elderly woman for whom she had reserved a commode at a New Canaan supply house because the commode the woman was using appeared unsafe. The plaintiff's supervisor told her not to deliver the commode herself, but to have the patient's caretaker pick it up. While visiting that patient on April 26, 1994, the plaintiff noted that her physical condition had worsened and thought that her makeshift commode was unsafe and needed to be replaced as soon as possible. The plaintiff, therefore, decided to drive to the supply house to pick up the commode. While driving to the supply house, the plaintiff saw a postal truck parked on the opposite side of the street. Recalling that she had a greeting card to mail to a friend, the plaintiff stopped and parked her car. The plaintiff exited her car, crossed the street and handed the card to the mail carrier. While crossing back to her car, the plaintiff was struck by an automobile.

"Although there was an unwritten agency policy that visiting nurses were not supposed to pick up or deliver items for patients, such activities were not prohibited by the agency's policy manual. The plaintiff admitted that she knew of this policy. Furthermore, her supervisor stated that the plaintiff had no specific authorization to mail a personal letter while in the course of her

employment. The supervisor agreed, however, that the patient's commode was unsafe and needed to be replaced.

"The commissioner concluded that the plaintiff's decision to pick up the commode was reasonable under the circumstances and that the plaintiff was acting in the course of her employment while doing so. She also found that the plaintiff's brief stop to mail a greeting card was so inconsequential, relative to her job duties, that it did not remove her from the course and scope of her employment. The commissioner concluded that the plaintiff's conduct was not wilful and wanton so as to preclude a workers' compensation claim and, therefore, the plaintiff's injuries, sustained on April 26, 1994, were compensable." *Kish* v. *Nursing & Home Care, Inc.*, 47 Conn. App. 620, 621–23, 706 A.2d 1372 (1998). The board and the Appellate Court both affirmed this conclusion. The defendants requested permission to appeal from the latter ruling, and we granted certification.[2]

"It is an axiom of [workers'] compensation law that awards are determined by a two-part test. The [claimant] has the burden of proving that the injury claimed arose out of the employment and *occurred in the course of* the employment. There must be a conjunction of [these] two requirements . . . to permit compensation. . . . The former requirement relates to the origin and cause of the accident, while the latter requirement relates to the time, place and [circumstance] of the accident." (Citation omitted; emphasis in original; inter-

---

[2] We granted certification limited to the following issue: "Did the [commissioner], the [board] and the Appellate Court properly conclude that the [plaintiff] satisfied the second and third elements of the 'in the course of employment' test, which require that the employee, at the time of injury, be at a place where she may reasonably have been while fulfilling the duties of her employment or doing something incidental to it?" *Kish* v. *Nursing & Home Care, Inc.*, 244 Conn. 919, 920, 714 A.2d 6 (1998).

nal quotation marks omitted.) *Mazzone* v. *Connecticut Transit Co.*, 240 Conn. 788, 792–93, 694 A.2d 1230 (1997).

The certified question[3] in the present appeal is limited to the latter *Mazzone* requirement. It is well settled that we parse this requirement by reference to three factors that we set forth over eighty years ago in *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 308, 97 A. 320 (1916): "In order to establish that [the] injury occurred *in the course of employment,* the claimant has the burden of proving that the accident giving rise to the injury took place (a) within the period of the employment; (b) at a place [the employee] may reasonably [have been]; and (c) while [the employee was] reasonably fulfilling the duties of the employment or doing something incidental to it." (Emphasis added; internal quotation marks omitted.) *Mazzone* v. *Connecticut Transit Co.*, supra, 240 Conn. 793.

Because the first prong of the *Larke* inquiry is neither contested by the defendants nor addressed by the certified question,[4] we limit our discussion to the remaining two prongs. For present purposes, it therefore suffices to state that—in order to be compensable—the plaintiff's injury must have occurred (1) at a place where she reasonably may have been and (2) while she was reasonably fulfilling the duties of her employment or doing something incidental to it. Id.; accord *Spatafore* v. *Yale University,* 239 Conn. 408, 418, 684 A.2d 1155 (1996); *McNamara* v. *Hamden,* 176 Conn. 547, 550–51, 398 A.2d 1161 (1979); *Larke* v. *Hancock Mutual Life Ins. Co.,* supra, 90 Conn. 308. The defendants claim that the commissioner could not reasonably have found that the plaintiff satisfied either prong of this test. We are not persuaded on either count.

[3] See footnote 2 of this opinion.
[4] See footnote 2 of this opinion.

We insulate the work of the commissioner by affording it a substantial quantum of deference. "[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . [T]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Moreover, the fact that the inference may involve an application of a broad statutory term or phrase to a specific set of facts does not result in any greater scope of judicial review." (Citation omitted; internal quotation marks omitted.) *Crochiere* v. *Board of Education*, 227 Conn. 333, 347, 630 A.2d 1027 (1993); accord *Mazzone* v. *Connecticut Transit Co.*, supra, 240 Conn. 792; *Spatafore* v. *Yale University*, supra, 239 Conn. 418 ("[t]he determination of whether an injury arose out of and in the course of employment is a question of fact for the commissioner"); *Fair* v. *People's Savings Bank*, 207 Conn. 535, 539–40, 542 A.2d 1118 (1988); *Herbst* v. *Hat Corp. of America*, 130 Conn. 1, 4, 31 A.2d 329 (1943).

In the present appeal, the plaintiff (1) was at a place where she was reasonably entitled to be because (2) it was necessary to be where she was in order to fulfill the duties of her employment. The facts in support of this conclusion may be stated briefly. The defendant had authorized the plaintiff to drive in the vicinity where she was injured;[5] in fact, the defendant *required* her to do so in the performance of her duties, and compensated her both for her mileage and for the time that she spent on the road between patients. At the time of her injury, the plaintiff—a professional nurse—was attempting to obtain a medical necessity for a patient

[5] "[T]he plaintiff could reasonably be found driving her automobile in the general area of the accident during her workday, with either the express or implied permission or acquiescence of her employer . . . ." *Kish* v. *Nursing & Home Care, Inc.*, supra, 47 Conn. App. 625.

who desperately needed it. For these reasons, the commissioner was correct to award compensation, and both the board and the Appellate Court were correct to affirm that award.

The defendants' argument that the commissioner abused his discretion focuses upon two details, neither of which is material. First, the defendants emphasize that the defendant did not acquiesce to the manner in which the plaintiff sought to benefit her patient. This emphasis does not avail the defendants.[6] "[W]hen misconduct involves a violation . . . relating to the *method* of accomplishing [the] ultimate work [to be done by the claimant], the act remains within the course of employment." (Emphasis in original.) 2 A. Larson & L. Larson, Workers' Compensation Law (1998) § 31.00, p. 6-10. The plaintiff's "ultimate work" consisted of bringing medical care to the homes of patients; this is precisely what she was doing when she was injured. On the day of the accident, the plaintiff observed that her elderly patient's condition had deteriorated: she could neither get out of bed nor walk without assistance. The commissioner explained that the plaintiff determined, "based on her twenty-two years of experience as a nurse, and based on the condition of her patient . . . that it was imperative that a proper[ly] functioning commode be obtained for [her patient] as expeditiously as possible." The plaintiff's supervisor concurred with the plaintiff's diagnosis, which was the sole motivation for the trip to New Canaan.

In short, the plaintiff was injured in the midst of her effort to procure a medical necessity[7] for her patient's home. It could not be plainer that the trip taken to

---

[6] In fact, the defendants concede that an employee does "not automatically disqualify herself from workers' compensation benefits by simply violating a rule . . . ."

[7] The commode was unsafe, in large measure, because the elderly patient's medical condition left her particularly vulnerable and fragile.

accomplish this goal constituted the very work for which the defendant employed the plaintiff, even if the method did not comport with the employer's wishes. The contrary result would "reduc[e] the distinction [between 'ultimate work' and 'method'] to absurdity." Id., § 31.21, p. 6-26.[8]

Second, the defendants emphasize that the plaintiff was mailing a greeting card—rather than driving to procure a medical necessity for her patient's home—at the moment she was injured. This emphasis is also unavailing. As discussed previously, an injury is compensable if it occurs while the employee is "reasonably fulfilling the duties of the employment *or doing something incidental to it.*" (Emphasis added; internal quotation marks omitted.) *Mazzone* v. *Connecticut Transit Co.*, supra, 240 Conn. 793. Over a decade ago, we observed that "no bright line test distinguishes activities that are incidental to employment from those that constitute a substantial deviation therefrom. . . . The question of deviation is typically one of fact for the trier. *Labbe* v. *American Brass Co.*, 132 Conn. 606, 609–10, 46 A.2d 339 (1946). In deciding whether a substantial deviation has occurred, the trier is entitled to weigh a variety of factors, including the time, place and extent of the deviation; *Herbst* v. *Hat Corporation of America*, [supra, 130 Conn. 7]; as well as 'what duties

---

[8] "The only tricky feature of [the] distinction [between 'ultimate work' and 'method'] is that it can, by a play upon words, be converted into a contradiction of itself. . . . [B]y . . . blending ultimate object and method, one can convert all instructions on method into delimitations of scope of employment, and end by reducing the distinction to absurdity. One can say that a lineman is employed only to repair lines while he has his gloves on, that an errand boy is employed to deliver a message by way of Street A and not by way of Street B, and that an oiler is employed to oil only machines that are standing still and not those that are in motion. . . . [Such] sophistry has had very little success, and the great weight of present authority respects the plain meaning of the distinction between method and ultimate objective." 2 A. Larson & L. Larson, supra, § 31.21, pp. 6-25 through 6-26.

were required of the employee and the conditions surrounding the performance of his work . . . .' *Farnham* v. *Labutis*, 147 Conn. 267, 270, 160 A.2d 120 (1960)." (Citations omitted.) *Rawling* v. *New Haven*, 206 Conn. 100, 107, 537 A.2d 439 (1988);[9] accord *Luddie* v. *Foremost Ins. Co.*, 5 Conn. App. 193, 196–97, 497 A.2d 435 (1985) ("In determining whether an unauthorized deviation from the employment is so slight as not to relieve the employer from liability, or of such a character as to constitute a temporary abandonment of the employment, [t]he true test is analogous to that applied to determine whether a deviation in agency terminates that relationship. . . . [T]he trier must take into account, not only the mere fact of deviation, but its extent and nature relatively to time and place and circumstances, and all the other detailed facts which form a part of and truly characterize the deviation . . . ." [Citation omitted; internal quotation marks omitted.]); 1 A. Larson & L. Larson, supra, § 19.00, p. 4-444 ("[a]n identifiable deviation from a business trip for personal reasons takes the employee out of the course of employment . . . *unless the deviation is so small as to be disregarded as insubstantial*" [emphasis added]).

The defendants misstate our law when they assert that "the employer's permission (express or tacit) is crucial to a finding that an activity is . . . incidental to the employment." Significantly, neither of the two cases upon which the defendants relied at oral argument involves an analysis of the "incidental to [employment]" prong of the *Larke* test. See *Mazzone* v.

[9] Although the pertinent claim in *Rawling* sounded in statutory indemnification, rather than workers' compensation, all of the cases cited in the quoted passage are workers' compensation cases. Moreover, we expressly invoked in *Rawling* "the meaning of 'course of employment' under workers' compensation law" in order to interpret the phrase "in the course of his duty" as that term is used in General Statutes § 53-39a. *Rawling* v. *New Haven*, supra, 206 Conn. 106. "That statute affords a police officer a right of indemnity for economic loss incurred for a prosecution 'for a crime

*Connecticut Transit Co.*, supra, 240 Conn. 796–97 (requiring approval or acquiescence under "place [where employee] may reasonably [have been]" prong of *Larke*); *Herbst* v. *Hat Corp. of America*, supra, 130 Conn. 6 (same).[10] That said, several of the other cases cited in the defendants' brief appear to lend credence to their claim that acquiescence is "crucial" to a finding that a particular act is "incidental to [employment]."[11] This appearance is deceiving.

Of the three prongs of the "course of employment" test set forth in *Larke*, the "incidental to [employment]" inquiry "has been most subject to distortion from one type of case to another." *McNamara* v. *Hamden*, supra, 176 Conn. 552. Nearly seventy years ago, we recognized

---

allegedly committed by such officer in the course of his duty as such' if 'the charge is dismissed or the officer found not guilty.' " Id., 104.

[10] We wish to be scrupulously clear on this point. Although we did hold that the claimant in *Mazzone* was entitled to compensation "only if the [employer] had either approved of or acquiesced in the claimant's presence on an out of service bus during the lunch time period," we carefully and explicitly limited this holding to the "place" prong of the *Larke* inquiry. *Mazzone* v. *Connecticut Transit Co.*, supra, 240 Conn. 796. More fully, we explained that: "[W]e must . . . determine if, on the record before us, the claimant has satisfied *the second part* of the 'in the course of employment' test by proving that, at the time of his injury, he was '*at a place [he] may reasonably [have been]*.' . . . We begin by noting that, *under this part of the 'in the course of employment' test*, the claimant cannot prevail simply by proving that he was on the employer's premises at the time of his injury. . . . [I]n order to be eligible for compensation, [the claimant] must have had a right to be on the out of service bus when his accident occurred. . . . We conclude that the claimant had *such a right* only if the [employer] had either approved of or acquiesced in the claimant's presence on an out of service bus during the lunch time period." (Citations omitted; emphasis added.) Id.; see *Herbst* v. *Hat Corp. of America*, supra, 130 Conn. 6 ("Whether [the injury] occurred *at a place where [the claimant] might reasonably [have been]* is the question to be decided by the commissioner. The test is, was the use of [the] route [along which the claimant was injured] a risk annexed to the employment by the acquiescence of the employer?" [Emphasis added.]). As we have previously discussed, we find that the defendant in the present appeal acquiesced to the trip that the plaintiff took in order to procure a medical necessity for her patient.

[11] See footnote 14 of this opinion for a discussion of these cases.

that "[n]o exact statement, applicable in all cases, can be made as to what is incidental to an employment." *Stakonis* v. *United Advertising Corp.*, 110 Conn. 384, 390, 148 A. 334 (1930). Although we remain unwilling to assay an exhaustive taxonomy of acts that are "incidental to [employment]," the present appeal calls upon us to clarify the contours of our law. For present purposes, it suffices to explain that the term of art "incidental" embraces two very different kinds of deviations: (1) a minor deviation that is "so small as to be disregarded as insubstantial"; 1 A. Larson & L. Larson, supra, § 19.00, p. 4-444; and (2) a substantial deviation that is deemed to be "incidental to [employment]" because the employer has acquiesced to it. If the deviation is so small as to be disregarded as insubstantial, then the lack of acquiescence is immaterial.[12]

This distinction reflects both common sense and fundamental fairness. Our law of workers' compensation— like our law of agency[13]—presumes that employers acquiesce to minor deviations that are so small as to be disregarded as insubstantial.[14] To use a simple exam-

---

[12] Correlatively, if the employer has acquiesced, then it is immaterial that the deviation was substantial.

[13] "In determining whether an unauthorized deviation from the employment is so slight as not to relieve the employer from liability, or of such a character as to constitute a temporary abandonment of the employment, '[t]he true test is analogous to that applied to determine whether a deviation in agency terminates that relationship.' *Herbst* v. *Hat Corporation of America*, [supra, 130 Conn. 7]." *Luddie* v. *Foremost Ins. Co.*, supra, 5 Conn. App. 196–97.

[14] This case presents us with our first opportunity to base a holding upon the insubstantial character of a deviation. It has been unnecessary to do so thus far because, in the overwhelming run of cases, employers acquiesce in the claimants' deviations. See *McNamara* v. *Hamden*, supra, 176 Conn. 555 (employer "sanctioned" relevant activity, which "occurred regularly on the premises of the employer"); *Katz* v. *Katz*, 137 Conn. 134, 137, 75 A.2d 57 (1950) (claimant injured while following employer's express directions); *Ruckgaber* v. *Clark*, 131 Conn. 341, 344, 39 A.2d 881 (1944) ("[t]he essential causal connection between the injury and the employment or the conditions incident thereto, by reason of the fact that the trip . . . was made . . . pursuant to the specific order of the [employer], is manifest"); *Stakonis* v.

ple, it would be both senseless and unjust to deny compensation to a claimant merely because she was injured

*United Advertising Corp.*, supra, 110 Conn. 390 (claimant injured while "acting under orders of his employer . . . [and] fulfilling one of the duties of his employment, or at least . . . doing something which [the employer] had annexed to the employment and made incidental to it"). We reject the defendant's claim that dicta in these cases compel the conclusion that no activity—no matter how inconsequential—may ever qualify as "incidental to [employment]" unless the employer has acquiesced.

As authority for its claim that "the employer's permission . . . is crucial to a finding that an activity is . . . incidental to the employment," the only case from this court that the defendant has cited is *McNamara*. In *McNamara*, we clarified our jurisprudence under the "incidental to [employment]" prong of the *Larke* inquiry by holding that a benefit to the employer is not a prerequisite for compensability. *McNamara* v. *Hamden*, supra, 176 Conn. 555. Significantly, we also stated in *McNamara* that acquiescence "constitute[s] a *sufficient*"—not a *necessary*—"basis on which to conclude that [an activity is] an incident of the employment . . . ." (Emphasis added.) Id., 556. As noted previously, the employer in *McNamara* sanctioned the relevant activity. Id., 555. We held in *McNamara* that this was *enough* to justify workers' compensation, not that it was indispensable. Id., 556.

The defendants have called our attention to only two cases in which this court has ever denied compensation because the employer did not acquiesce to the relevant act. Neither of these cases casts any doubt upon the proposition that employers acquiesce to deviations that are so small as to be disregarded as insubstantial. In *Vitas* v. *Grace Hospital Society*, 107 Conn. 512, 517–18, 141 A. 649 (1928), the court repeatedly emphasized that actual knowledge is not a condition precedent to compensability; again and again, the opinion stressed that "constructive knowledge" may suffice. See id. (explaining that courts may "charge the employer with notice of [the] plaintiff's act," "infe[r] that [the] employer" either permitted or knew of a particular act, "make [an] inference as [a] matter of law," and "imput[e] to [the employer] knowledge of the [claimant's] practice"). On the facts of *Vitas*, the court determined that "the circumstances surrounding the condition of the [place where the claimant was injured] and the supervision over it were [not] such that from them might be drawn the necessary inferences" required to support a finding that the relevant act was incidental to employment. Id., 518. Although the court did not put it in these terms in *Vitas*, it is apparent that the commissioner may extract the "necessary inferences" from the fact that the deviation is so small as to be disregarded as insubstantial.

That leaves only one case from this court: *Farnham* v. *Labutis*, supra, 147 Conn. 267. In the wake of *McNamara*, the precedential value of *Farnham* is questionable. In *Farnham*, we relied upon the fact that the commissioner's finding was "silent as to whether the [activity] . . . was of . . . benefit or advantage to the employer . . . ." Id., 271. As discussed previously, we unequivocally rejected this consideration in *McNamara*. Even if the case

while pausing for a moment to converse with a colleague standing by the proverbial water cooler.[15]

Returning to the facts before us in the present appeal, we conclude that the absence of permission is not fatal to the plaintiff's claim, because the deviation was so minor as to be disregarded as insubstantial. We agree with the board and the Appellate Court that the commissioner did not abuse his discretion by concluding that the plaintiff's decision to "momentarily [stop] to mail a personal card was so inconsequential . . . so as to not remove her from acting in the course and scope of her employment . . . ."

It is telling that the professors Larson chose, in their treatise on workers' compensation law, to employ a hypothetical akin to the facts of the present appeal as the paradigm of an insubstantial deviation. They explain that such deviations represent "the kind of momentary diversions which, if undertaken by an inside employee working under fixed time and place limitations, would be compensable . . . . For, while *crossing a street* may seem to be a more conspicuous deviation than crossing a room, there is really no difference in principle between the trucker, whose work-place is the street,

were directly on point, however, *Farnham* cites *Vitas* for the proposition that a deviation may "bec[o]me incidental to the employment . . . by the . . . implied consent of the employer." Id. For the reasons discussed previously, this proposition clearly comports with our discussion of deviations that are so small as to be disregarded as insubstantial. Accordingly, it is of no moment that we deemed it necessary in *Farnham* to remand to the commissioner for further fact-finding. Id., 272.

[15] In contrast, it is not unfair to deny compensation to a claimant injured at a place where she was not reasonably entitled to be, unless the employer acquiesced. See footnote 10 of this opinion. The rationale for this distinction inheres in the fact that absence from the workplace constitutes a substantial deviation from the scope of employment. If—instead of suffering an injury while conversing with a colleague at the water cooler—the claimant were injured while conversing with a relative in a town 100 miles from her place of work, neither common sense nor equity would dictate that she should be entitled to compensation if her employer had not acquiesced to the deviation.

who crosses the street for a glass of beer, and an inside worker who goes an equal distance down the hall to get a cola drink from the cola machine . . . ."[16] (Emphasis added.) Id., § 19.63, p. 4-527.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[16] The professors Larson include in their treatise a survey of opinions upholding awards to employees who were injured while "running across the street in the course of a delivery trip to buy a little food . . . crossing the street during a beer break to retrieve one's lunch . . . crossing the road during a delivery trip to have a glass of beer at 2:00 in the afternoon [or] to get a newspaper . . . ." 1 A. Larson & L. Larson, supra, § 19.63, pp. 4-523 through 4-525.