ROBERT DENNISON *v.* CONNECTICUT GOOD HUMOR, INC., ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

 

Argued January 8—decided March 19, 1943.

*Jeremiah D. Shea,* with whom, on the brief, was *David E. FitzGerald, Jr.,* for the appellant (plaintiff).

*Walter T. Walsh,* for the appellees (defendants).

JENNINGS, J. The finding, as corrected in the Superior Court, is summarized by the trial judge as follows: The named defendant is engaged in the business of selling a commodity known as "Good Humors," which are made of ice cream attached to sticks. These are sold by young men whom it employs, stationed at various points along the highways. The "Good Humors" are carried in containers and the young salesmen are known as container boys. On June 20, 1941, the plaintiff, a lad of eighteen years, entered the defendant's employ as a container boy and was instructed in the technique of the company's style of salesmanship. The plaintiff was assigned to a location on White Street, Danbury, to which, by the terms of his employment, he was taken during the morning in one of the defendant's trucks operated by Murray Zeidenberg. In addition to this task, Zeidenberg was required to park here and there along a certain route to sell "Good Humors" carried in the truck. He was also required to call at the plaintiff's station each evening

at 6 o'clock to replenish, if necessary, the latter's supply of "Good Humors." Then, at 11 o'clock, he would pick up the plaintiff, collect such ice cream as was unsold and whatever receipts the plaintiff had in his possession from the sales made during the day and evening and the two would return to New Haven. The period of the plaintiff's employment commenced when he left the defendant's plant in New Haven and ended upon his return.

On the morning of June 30, 1941, with Zeidenberg at the wheel of the truck and the plaintiff as a passenger, they started for Danbury. While on the way, the plaintiff asked and received permission to drive the truck and, while so engaged, he ran into the rear of another vehicle headed in the same direction; as a result of the accident a bone in his arm was fractured and he was incapacitated until October 18, 1941. On May 1, 1941, he had obtained a driver's license and when he had first sought employment with the defendant he had asked for a truck-driving job, but an official of the company told him he was too young and inexperienced for such work. He understood why the company would not employ him as a driver and he knew he had no authority to operate the truck on the day in question.

In order to be compensable, such an injury must arise out of and in the course of the employment. General Statutes, § 5226. The commissioner and trial court concurred in concluding that the injury did not arise out of the plaintiff's employment. The finding cannot be further corrected and the question therefore is whether the subordinate facts support that conclusion.

"The term 'arising out of' in this Act points to the origin or cause of the injury. . . . An injury which is a natural and necessary incident or consequence of

the employment, though not foreseen or expected, arises out of it." *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 309, 97 Atl. 320; *Davis* v. *Goldie Motors, Inc.*, 129 Conn. 240, 242, 27 Atl. (2d) 164; General Statutes, § 5223. The question whether an employee has so departed from his employment that an injury suffered by reason of that deviation will or will not be held to have arisen out of the employment, while it may be one of law, ordinarily is one of fact. *Herbst* v. *Hat Corporation of America,* ante, p. 1. We held that that case should be remanded to the commissioner because, in concluding that the injury did not arise out of the employment, he apparently failed to apply the proper standard for deciding the question. In the case before us the commissioner definitely reached the conclusion that the injury did not arise out of the employment and there is nothing to indicate that he did not apply a correct standard in so holding. The question was one of fact and the commissioner could reasonably reach the conclusion he did. See *Garriepy* v. *Ballou & Nagle, Inc.,* 114 Conn. 46, 51, 157 Atl. 535.

The cases relied on by the plaintiff which involve transportation to the place of employment are irrelevant. Had the injury occurred while Zeidenberg was driving the plaintiff to his work, it would have arisen both in the course of and out of his employment, but that is not the situation. The element of emergency which sometimes saves a case for a plaintiff is also absent. The situation is more nearly parallel to that in such cases as *Utah Copper Co.* v. *Industrial Commission,* 62 Utah 33, 217 Pac. 1105; *Modoc County* v. *Industrial Accident Commission,* 32 Cal. App. 548, 163 Pac. 685; *Bullard* v. *Cullman Heading Co.,* 220 Ala. 143, 124 So. 200; *Whelan* v. *Moore,* 43 Ir. L.T.R. 205,

2 B.W.C.C. 114. See also note, 119 A.L.R. 1409, and earlier notes therein referred to.

While the injury may be said to have arisen in the course of the plaintiff's employment we cannot disturb the conclusion of the commissioner that it did not arise out of the plaintiff's employment.

There is no error.

In this opinion the other judges concurred.