## GREGORY KOLOMIETS *v.* SYNCOR INTERNATIONAL CORPORATION ET AL.
### (SC 16081)

McDonald, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued October 27, 1999—officially released March 7, 2000

*Jason M. Dodge*, for the appellants (defendants).

*Michael R. Kerin*, with whom, on the brief, was *Brendan T. Canty*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The named defendant, Syncor International Corporation,[1] appeals from the judgment of the Appellate Court reversing the decision of the workers' compensation review board (board) dismissing the claim for workers' compensation benefits filed by the plaintiff, Gregory Kolomiets. The dispositive issue in this certified appeal is whether the injuries suffered by the plaintiff arose out of and in the course of his employment and, consequently, whether the plaintiff is entitled to benefits under our workers' compensation system. We conclude that the plaintiff's injuries did arise out of and in the course of his employment and, therefore, we affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts. "In January, 1993, the defendant . . . hired the plaintiff as a part-time employee to deliver products from [the defendant's] place of business in Stamford to various hospitals in Connecticut and southern New York. [The defendant] dealt in radio-

[1] CNA Insurance Company, the workers' compensation insurer for Syncor International Corporation, is also a party to this appeal. Because the claims of the two parties are identical, and for the sake of simplicity, we will follow the practice of the parties and refer to Syncor International Corporation as the defendant.

active products and was subject to regulation by the Nuclear Regulatory Commission. Consequently, [the defendant] maintained manuals at its offices in Stamford outlining the recommended routes its drivers should take when transporting its products. Routes could be changed by the drivers if necessary.

"On February 10, 1993, the plaintiff reported to work and was assigned to deliver products to Lawrence Hospital in Bronxville, New York. The plaintiff used [the defendant's] vehicle to make the deliveries. After making his deliveries, the plaintiff discovered that he had left his wallet and driver's license at home. When the plaintiff returned to Connecticut on Interstate 95, he passed exit 6, which he would have taken to return to [the defendant's] offices, and instead used exit 7 to go to his home to retrieve his wallet and driver's license because he did not know if [the defendant] had any more deliveries for him to make that day. After getting off at exit 7, the plaintiff was involved in a motor vehicle accident as a result of which he suffered injuries.

"Brian Welsh, the plaintiff's supervisor, testified that he would have preferred that the plaintiff call him about the missing license, return to [the defendant's] office and punch out, and then use his own vehicle to go home and retrieve his driver's license and wallet. Welsh also testified that [the defendant] had no additional work for the plaintiff on February 10, 1993, and, therefore, there was no work-related reason for the plaintiff to have his driver's license that afternoon. Subsequently, [the defendant] terminated the plaintiff from its employment because he was involved in a 'preventable accident.'

"On January 5, 1996, the workers' compensation commissioner for the seventh district issued a finding and award for the plaintiff as a result of that accident. The commissioner found that the deviation from the plain-

tiff's exact job duties was minor and not so unreasonable and unwarranted as to preclude him from receiving workers' compensation benefits. On June 23, 1997, the board reversed the commissioner's finding of compensability. The board found that the plaintiff had finished delivering [the defendant's] products and was engaged in a completely separate side trip when he was injured." *Kolomiets* v. *Syncor International Corp.*, 51 Conn. App. 523, 524–26, 723 A.2d 1161 (1999).

Pursuant to General Statutes § 31-301b,[2] the plaintiff appealed to the Appellate Court, which reversed the board's decision and directed the board to affirm the commissioner's finding and award. *Kolomiets* v. *Syncor International Corp.*, supra, 51 Conn. App. 530. The Appellate Court concluded that the board had improperly substituted its own factual findings for those of the commissioner, even though the commissioner's findings were based on "an adequate foundation in the facts . . . ." Id., 528. The Appellate Court further concluded that the board improperly made employer consent a prerequisite to compensability under the joint benefit exception,[3] even though the plaintiff's deviation from work had been minor, and had served both personal and business objectives. Id., 529. Thereafter, we granted the defendant's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that the compensation review board improperly reversed the commissioner's finding and award?" *Kolomiets* v. *Syncor International Corp.*, 248 Conn. 906, 731 A.2d 308 (1999).

---

[2] General Statutes § 31-301b provides: "Any party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision of the Compensation Review Board to the Appellate Court."

[3] The joint benefit exception refers to a deviation from work made by an employee that serves both the employee's personal needs and his employer's business objectives. See *Dombach* v. *Olkon Corp.*, 163 Conn. 216, 224, 302 A.2d 270 (1972).

On appeal to this court, the defendant argues that the Appellate Court improperly concluded that the plaintiff's injuries arose out of and in the course of his employment. The defendant further argues that our recent decision in *Kish* v. *Nursing & Home Care, Inc.*, 248 Conn. 379, 727 A.2d 1253 (1999), mandates a reversal of the Appellate Court's judgment.[4] We conclude, however, that the Appellate Court's conclusions were both proper and not inconsistent with our recent decision in *Kish*. We therefore affirm the judgment of the Appellate Court.

I

As an initial matter, we set forth the standard of review by which we judge the defendant's appeal. A commissioner's "conclusions . . . from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." *Fair* v. *People's Savings Bank*, 207 Conn. 535, 539, 542 A.2d 1118 (1988). "This rule leads to the conclusion that unless the case lies clearly on the one side or the other the question whether an employee has so departed from his employment that his injury did not arise out of it is one of fact." (Internal quotation marks omitted.) *Spatafore* v. *Yale University*, 239 Conn. 408, 420, 684 A.2d 1155 (1996).

II

Having delineated the proper standard of review, we turn to the main issue in this appeal, namely, whether the plaintiff's injuries arose out of and in the course of his employment, and therefore entitle the plaintiff to receive workers' compensation benefits. The Appellate Court concluded that the commissioner had properly

---

[1] We decided *Kish* after the Appellate Court had issued its opinion in the present case.

determined that the plaintiff's injuries had arisen out of and in the course of his employment. We agree.

We recently had the opportunity in *Kish* v. *Nursing & Home Care, Inc.*, supra, 248 Conn. 379, to reiterate the general test for compensability under our workers' compensation system. "It is an axiom of [workers'] compensation law that awards are determined by a two-part test. The [claimant] has the burden of proving that the injury claimed arose out of the employment and *occurred in the course of* the employment. There must be a conjunction of [these] two requirements . . . to permit compensation. . . . The former requirement relates to the origin and cause of the accident, while the latter requirement relates to the time, place and [circumstance] of the accident. . . . *Mazzone* v. *Connecticut Transit Co.*, 240 Conn. 788, 792–93, 694 A.2d 1230 (1997)." (Emphasis in original; internal quotation marks omitted.) *Kish* v. *Nursing & Home Care, Inc.*, supra, 382–83.[5] In order, therefore, for the plaintiff in the present case to be entitled to workers' compensation benefits, he must satisfy both parts of this two part test.

A

We consider first whether the plaintiff's injuries occurred in the course of his employment by the defendant. "It is well settled that we parse [the in the course of] requirement by reference to three factors that we set forth over eighty years ago in *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 308, 97 A. 320 (1916):

---

[5] In *Kish*, the certified question was limited to the latter requirement. The question presented there was: " 'Did the [commissioner], the [board] and the Appellate Court properly conclude that the [plaintiff] satisfied the second and third elements of the "in the course of employment" test, which require that the employee, at the time of the injury, be at a place where she may reasonably have been while fulfilling the duties of her employment or doing something incidental to it?' " *Kish* v. *Nursing & Home Care, Inc.*, supra, 248 Conn. 382 n.2.

In order to establish that [the] injury occurred in the course of employment, the claimant has the burden of proving that the accident giving rise to the injury took place (a) within the period of the employment; (b) at a place [the employee] may reasonably [have been]; and (c) while [the employee was] reasonably fulfilling the duties of the employment or doing something incidental to it. . . . *Mazzone* v. *Connecticut Transit Co.*, supra, 240 Conn. 793." (Internal quotation marks omitted.) *Kish* v. *Nursing & Home Care, Inc.*, supra, 248 Conn. 383.

Of these three factors, only the second and third were part of the certified issue in *Kish*. See footnote 5 of this opinion. Nevertheless, both the facts of that case, and the analytical rubric that we employed to answer the certified question, are instructive for our consideration of this appeal.

In *Kish*, the plaintiff was a registered nurse with twenty-two years of experience who was employed by the defendant on a full-time basis to travel to patients' homes and oversee their care. Id., 385. The plaintiff had reserved a new commode from a supply house for one of her patients because she believed that the commode the patient had been using was unsafe. She was told specifically by her supervisor not to deliver the commode herself, but nonetheless she attempted to make the delivery. On the way to the supply house, the plaintiff stopped her car to get out and hand deliver a personal letter to a mail carrier. While she was stopped, the plaintiff was struck by a car. Id., 381. Despite these deviations, we affirmed the commissioner's award of compensation benefits. Id., 380.

Under our holding in *Kish*, the question crucial to our determination of whether an injury occurred in the course of employment is whether the injured employee was performing some task incidental to her employ-

ment, or was engaged in a "substantial deviation" from her employment. In answering this question, "no bright line test distinguishes activities that are incidental to employment from those that constitute a substantial deviation therefrom. . . . The question of deviation is typically one of fact for the trier. *Labbe* v. *American Brass Co.*, 132 Conn. 606, 609–10, 46 A.2d 339 (1946). In deciding whether a substantial deviation has occurred, the trier is entitled to weigh a variety of factors, including the time, place and extent of the deviation; *Herbst* v. *Hat Corporation of America*, [130 Conn. 1, 7, 31 A.2d 329 (1943)]; as well as what duties were required of the employee and the conditions surrounding the performance of his work . . . . *Farnham* v. *Labutis*, 147 Conn. 267, 270, 160 A.2d 120 (1960). . . . *Rawling* v. *New Haven*, 206 Conn. 100, 107, 537 A.2d 439 (1988) . . . ." (Citations omitted; internal quotation marks omitted.) *Kish* v. *Nursing & Home Care, Inc.*, supra, 248 Conn. 386–87. Secondary to that inquiry is the issue of employer acquiescence. Contrary to the defendant's assertions, employer acquiescence is a prerequisite to compensability *only* if the deviation previously has been determined to be substantial. Otherwise, "[i]f the deviation is so small as to be disregarded as insubstantial, then the lack of acquiescence is immaterial." Id., 389.

In *Kish*, we employed these distinctions and reached the conclusion that the plaintiff's arguably unauthorized trip to pick up the new commode, and her subsequent decision to cross the street and mail a letter while she was delivering that commode to one of her patients was a "deviation . . . so minor as to be disregarded as insubstantial." Id., 391. We are compelled to reach a similar conclusion in the present case.

As discussed previously, it is axiomatic that the determination of whether the plaintiff's injury occurred in the course of his employment presents a question of

fact for the commissioner; *Hanson* v. *Transportation General, Inc.*, 245 Conn. 613, 623, 716 A.2d 857 (1998); and that we "insulate the work of the commissioner by affording it a substantial quantum of deference." *Kish* v. *Nursing & Home Care, Inc.*, supra, 248 Conn. 384. With that deference in mind, we consider the facts of the present case under the analytical rubric that we established in *Kish*.

The commissioner determined that the plaintiff's decision to drive to his house and retrieve his driver's license constituted only a minor deviation. This factual determination was based on evidence that: the plaintiff had followed a recommended, but not required, route; the plaintiff had gone only one exit past the ideal highway terminus to a location within the same city as the company headquarters; and the plaintiff attempted to retrieve a license that would have allowed him legally to fulfill further duties that would have been within the course of employment, and that he reasonably could have expected to be asked to perform.

After a careful review of the record, and bearing in mind the deference we give to a commissioner's factual findings, we conclude that the commissioner's finding that the plaintiff's deviation was minor was not clearly erroneous. Although the facts of the two cases are not precisely the same, we cannot say that the plaintiff's deviation from work in the present case so far exceeds the deviation from work in *Kish* as to mandate a departure from our traditional deference to the commissioner's factual findings.[6]

The defendant advances several arguments in an attempt to distinguish this case from *Kish*, and to claim

[6] The first prong of the *Larke* test, namely, whether the injury occurred within the period of employment, was not a part of the certified issue in *Kish*. That fact, however, does not alter our holding in the present case, as the defendant does not dispute that the plaintiff's injuries meet that initial requirement.

that the plaintiff's injuries did not occur in the course of his employment. None of this is persuasive.

First, the defendant argues that the Appellate Court improperly failed to consider whether the plaintiff's trip to his house fell within the "joint benefit" exception to the coming and going rule. This argument misinterprets the scope of the coming and going rule, and therefore offers the defendant no support.

It is true, as a general matter, that "an injury sustained by an employee on a public highway while traveling to or from his place of employment is not compensable." *True* v. *Longchamps, Inc.*, 171 Conn. 476, 478, 370 A.2d 1018 (1976). The defendant claims that, in order for the plaintiff's injuries to be compensable, his trip would have had to come under the "joint benefit" exception to this rule, which permits compensation for injuries sustained on a public highway "where the employee is injured while using the highway in doing something incidental to his regular employment, for the joint benefit of himself and his employer, with the knowledge and approval of the employer." *Dombach* v. *Olkon Corp.*, 163 Conn. 216, 222, 302 A.2d 270 (1972). As the plaintiff's trip to his home was unsanctioned, the defendant claims that the coming and going rule bars compensation.

This argument ignores a more general exception to the coming and going rule, namely, "[i]f the work requires the employee to travel on the highways . . . ." Id. In the case of an employee, such as the plaintiff, whose *entire job* consists of highway travel, this more general exception to the coming and going rule clearly applies. See *Luddie* v. *Foremost Ins. Co.*, 5 Conn. App. 193, 196, 497 A.2d 435 (1985) (exception to general rule "where the contract of employment itself involves, in its actual performance . . . the use of the public highways"). In the present case, the plaintiff was hired by the defendant for the express purpose of delivering

"products from [the defendant's] place of business in Stamford to various hospitals in Connecticut and southern New York." *Kolomiets* v. *Syncor International Corp.*, supra, 51 Conn. App. 523. His job consisted, therefore, almost exclusively of highway travel. The coming and going rule cannot be said, therefore, to bar compensation, regardless of whether the plaintiff drove to his house to retrieve his license without the defendant's knowledge and approval.[7]

Second, the defendant claims that the Appellate Court improperly failed to consider whether the plaintiff's deviation from work was made with the defendant's approval or acquiescence. This argument, too, is unavailing. Our decision in *Kish* draws a clear distinction between minor deviations from work, which do not require employer acquiescence, and substantial deviations from work, which do require such acquiescence. *Kish* v. *Nursing & Home Care, Inc.*, supra, 248 Conn. 389. We already have determined that the commissioner's finding that the deviation in the present case was minor was not clearly erroneous. The defendant's alleged lack of acquiescence, therefore, is not fatal to the plaintiff's claim for compensation.

Finally, the defendant attempts to distinguish the facts of *Kish* from the facts of the present case by

---

[7] We are unpersuaded by the defendant's argument that this exception does not apply because "although the plaintiff was required at times to travel on highways during his work, there never was any need for the plaintiff to travel on the public roads between his home and the defendant's office *due to work*." (Emphasis added.) This contention ignores the commissioner's undisputed factual finding that, at the time he was involved in the accident, the plaintiff was traveling on the public roads between his home and the defendant's office in order to retrieve his driver's license, and that this retrieval was for the express purpose of allowing the plaintiff to make further deliveries for the defendant. Therefore, even if we were to assume, for the sake of argument, that this case did come within the joint benefit exception, there would be little doubt that the plaintiff's deviation was to the advantage of both himself and the defendant.

drawing our attention to the difference in experience between the plaintiff in *Kish* and the plaintiff in this case. That is a distinction without a difference. Although it may be the case, as the defendant argues, that the plaintiff in this case, as a new employee, had been given virtually no discretion to deviate from his assigned tasks, that fact does not alter the commissioner's factual determination that the *actual deviation made by the plaintiff* was minor. On that crucial point, *Kish* and the present case are indistinguishable, and the lesson of the former readily may be applied in the latter.

B

Having concluded that the plaintiff's injuries occurred in the course of his employment, we consider the second part of the compensability test, namely, whether those injuries arose out of his employment. In reversing the board's dismissal of the plaintiff's claim, the Appellate Court impliedly concluded that the plaintiff's injuries had arisen out of his employment. We agree.

Proof that the injury arose out of the employment relates to the "origin and cause of the accident." *Mazzone* v. *Connecticut Transit Co.*, supra, 240 Conn. 792–93. "[T]he essential connecting link of direct causal connection between the personal injury and the employment must be established before the act becomes operative. The personal injury must be the result of the employment and flow from it as the inducing proximate cause. The rational mind must be able to trace resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery." (Internal quotation marks omitted.) *Fair* v. *People's Savings Bank*, supra, 207 Conn. 545–46.

As with the determination that an injury occurred in the course of employment, the question of whether an

injury arose out of employment is one of fact. *Hanson* v. *Transportation General, Inc.*, supra, 245 Conn. 623. In the present case, the commissioner found, as a factual matter, that the plaintiff's injuries arose out of his employment by the defendant. Bearing in mind our customary deference to such factual determinations; *Spatafore* v. *Yale University*, supra, 239 Conn. 419; we conclude that the commissioner's finding on this point was not clearly erroneous. At the time when the plaintiff was injured, he was returning from a delivery made for the defendant, and his objective was to retrieve his driver's license so that he would be able to make more deliveries later that day without violating the law. The notion that the proximate cause of the plaintiff's detour to retrieve his license was his employment hardly causes the rational mind to rebel. Indeed, there exists in the present case a chain of proximate causation that suffices to satisfy a reasonable mind.

The defendant's claim that the causal link between the plaintiff's employment and his injuries is more tenuous a link than this court has in the past required for compensation is unavailing. In support of this proposition, the defendant cites two cases in which injured employees failed to satisfy this requirement. We conclude that both cases are easily distinguished from the facts in the present case.

In *Dennison* v. *Connecticut Good Humor, Inc.*, 130 Conn. 8, 10, 31 A.2d 332 (1943), an employee was injured while driving a vehicle to which his employer did not allow him access because of the employee's youth and immaturity. The court noted that the employee "understood why the company would not employ him as a driver and he knew he had no authority to operate the truck on the day in question." Id. In *Mason* v. *Alexandre*, 96 Conn. 343, 344, 113 A. 925 (1921), the plaintiff was struck by a train while walking across the tracks. He was attempting to take an off-road shortcut to reach a

doctor's office for medical treatment that would have been paid for by the employer. "In doing so [the employee] subjected himself to an extraordinary peril quite outside of any risk connected with his employment . . . ." Id., 345.

*Dennison* and *Mason* are readily distinguishable from the present case. In each of those cases, the injuries sustained did not arise out of employment. In both cases, the events that led to the injuries were unrelated to the employers' assigned tasks. This is in contrast to the present case, in that the essence of the plaintiff's employment involved the possession of a valid driver's license in order to deliver hospital products for the defendant. It was while fulfilling this responsibility that the plaintiff sustained his injuries. Neither case, therefore, affords the defendant's claims any shelter.

In sum, we conclude that the commissioner reasonably found that the injuries suffered by the plaintiff clearly satisfy both prongs of the compensability test of our workers' compensation system. The plaintiff was hurt while performing a minor deviation from his assigned task, a deviation that was necessary to his job as a deliveryman. Therefore, he is entitled to compensation for his injuries.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.