******************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************

# NATIONWIDE MUTUAL INSURANCE COMPANY ET AL. *v.* JEFFREY S. PASIAK ET AL.
## (SC 20617)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Ecker and Alexander, Js.

*Syllabus*

The plaintiff insurance companies sought a judgment declaring that they were not obligated to defend and indemnify the named defendant, J, a business owner, under J's homeowners and umbrella insurance policies for damages awarded in a tort action brought against him by the defendants S and S's husband. The tort action stemmed from an incident that occurred when S, who was employed by J's construction company, P Co., was working alone in P Co.'s office, which was located in J's home. A masked individual, K, entered J's home and bound, gagged, and blindfolded S. K put a gun to S's head and told S that he would kill her and her family if she did not open the safe, of which S claimed to have no knowledge. K continued to threaten S for approximately forty-five minutes. J then returned home and was attacked by K. J was eventually able to unmask K, revealing his identity as J's longtime friend. After S was untied, she asked to leave, but J prevented her from leaving or calling the police, even after S informed him of the extent of K's threats to her and her family. S returned to her own home hours later, and the police subsequently were contacted. At the time of the incident, J was covered under a personal homeowners policy and an umbrella policy, both of which were issued by the plaintiffs, but he did not hold a separate commercial liability policy. The plaintiffs provided J with an attorney to defend him in the tort action but indicated that they were reserving their right to contest liability coverage. In the tort action against J, which included a claim of false imprisonment, the jury returned a verdict for S and her husband and awarded damages. Subsequently, in the present declaratory judgment action, the trial court denied in part the plaintiffs' motion for summary judgment as to the plaintiffs' duty to indemnify J, concluding, inter alia, that the plaintiffs were not entitled to summary judgment under the umbrella insurance policy, which covered "personal injury," which, in turn, was defined to include false imprisonment. The declaratory judgment action proceeded to trial, and the trial court subsequently rendered judgment for J, concluding that the plaintiffs were required to indemnify him for his liability in the tort action. The plaintiffs appealed to the Appellate Court, which reversed the trial court's judgment, concluding, inter alia, that the trial court incorrectly had determined that the business pursuits exclusion in the umbrella policy did not apply. On the granting of certification, J appealed to this court, which concluded that both the trial court and the Appellate Court applied incorrect standards for determining whether the business pursuits exclusion barred coverage. In reversing the Appellate Court's judgment, this court ordered that the case be remanded to the trial court for a trial de novo on the business pursuits exclusion issue. On remand, the trial court concluded that the plaintiffs had satisfied their burden of proving that S's false imprisonment or injury was connected with, had its origins in, grew out of, flowed from, or was incident to J's business pursuits and, accordingly, that the business pursuits exclusion barred coverage for J's liability in the tort action and that the plaintiffs were not obligated to indemnify J. On appeal to this court, J claimed, inter alia, that the trial court had applied an incorrect standard when it determined that the plaintiffs satisfied their burden of proving, by a preponderance of the evidence, that the business pursuits exclusion barred coverage. *Held*:

1. The trial court properly applied the preponderance of the evidence standard to determine the factual question of whether the plaintiffs had established that the business pursuits exclusion in the umbrella policy barred coverage for J's liability in the tort action:

The preponderance of the evidence standard governs factual determinations required by a civil statute that is silent with respect to the applicable

standard of proof, and neither the statute (§ 52-29) nor any other legal authorities governing claims for declaratory relief contain a heightened standard of proof.

J could not prevail on his claim that, rather than applying the preponderance of the evidence standard, the trial court should have construed the business pursuits exclusion in favor of J, as the insured, unless it had a "high degree of certainty" that the insurance policy language clearly and unambiguously excluded J's claim, as J improperly conflated the tasks of construing the umbrella insurance policy, which this court did in the prior appeal in this case, with the making of factual determinations necessary to ascertain whether the exclusion unambiguously applied under the circumstances, which the trial court properly did on remand.

In light of the unusual procedural posture of this case, there was no need for the trial court, on remand, to apply the "high degree of certainty" standard or other principles of insurance contract interpretation, insofar as this court, in the prior appeal in this case, had previously interpreted the business pursuits exclusion and specified the factual situations in which that exclusion would clearly and unambiguously apply; rather, the trial court's task on remand from that prior appeal was to engage in a fact-specific inquiry to determine whether the plaintiffs had satisfied their burden of proving, by a preponderance of the evidence, that S's false imprisonment or injury was connected with, had its origins in, grew out of, flowed from, or was incident to J's business pursuits.

2. J could not prevail on his claims relating to whether the trial court correctly determined that the plaintiffs had carried their burden of proof with respect to whether the business pursuits exclusion applied:

The trial court did not incorrectly find in the plaintiffs' favor on the ground that they had failed to produce new, credible evidence that was not raised during the first trial.

Moreover, the trial court did not improperly fail to find that J's evidence, in the form of contemporaneous witness statements made on the day of the incident, was the most credible and reliable form of evidence in the record, and that the trial court's conclusion that K's actions constituted an attack on P Co. was unsupported by evidence in the record, as the record, viewed as a whole, contained evidence to support the factual findings of the trial court.

Furthermore, the trial court did not improperly find in the plaintiffs' favor on public policy grounds, as the public policy discussion in the trial court's memorandum of decision was not essential to the trial court's determination of the case and, therefore, was dictum.

Argued October 20, 2022—officially released February 21, 2023

*Procedural History*

Action for a declaratory judgment to determine whether the plaintiffs were obligated to defend and indemnify the named defendant under certain insurance policies for damages awarded against the named defendant in a separate action, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the Complex Litigation Docket, where the court, *Brazzel-Massaro, J.*, denied the plaintiffs' motion for summary judgment and granted the motion for summary judgment filed by the named defendant et al. as to the duty to defend under the policies; thereafter, the court granted in part the plaintiffs' motion for summary judgment as to the duty to indemnify under the homeowners insurance policy; subsequently, the case was tried to the court, *Brazzel-Massaro, J.*; judgment for the named defendant et al. with respect to the plaintiffs' duty to indemnify under the umbrella insurance policy, from which the plaintiffs appealed to the Appellate Court, *Keller*, *Prescott* and *West*, *Js.*, which reversed

the trial court's judgment and remanded the case with direction to render judgment for the plaintiffs with respect to the duty to indemnify under the umbrella policy and dismissed as moot that portion of their appeal regarding their duty to defend under the umbrella policy; thereafter, the named defendant et al., on the granting of certification, appealed to this court, which reversed the judgment of the Appellate Court with respect to the duty to indemnify under the umbrella policy and remanded the case to the Appellate Court with direction to remand the case to the trial court for further proceedings; subsequently, the case was tried to the court, *Hon. Charles T. Lee*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment for the plaintiffs, from which the named defendant et al. appealed. *Affirmed.*

*David J. Robertson*, with whom was *Keith M. Blumenstock* and, on the brief, *Justin R. Bengtson*, for the appellants (named defendant et al.).

*Robert D. Laurie*, with whom, on the brief, were *Andrew P. Barsom* and *Heather L. McCoy*, for the appellees (plaintiffs).

*Opinion*

McDONALD, J. This case comes to us for the second time following lengthy litigation of a declaratory judgment action brought by the plaintiffs, Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company, against the defendant Jeffrey S. Pasiak.[1] The action concerned whether the plaintiffs were obligated to indemnify the defendant, a business owner, under a personal umbrella insurance policy for liability arising from his false imprisonment of his company's employee at her workplace. Following a trial to the court in 2012, the trial court issued a memorandum of decision, concluding that the plaintiffs had a duty to indemnify the defendant. The plaintiffs appealed the decision to the Appellate Court, which reversed the judgment of the trial court on the basis that the claim fell within the business pursuits exclusion of the insurance policy. See *Nationwide Mutual Ins. Co.* v. *Pasiak*, 161 Conn. App. 86, 89, 101–102, 127 A.3d 346 (2015). This court subsequently reversed the judgment of the Appellate Court and concluded that the case must be remanded to the trial court to allow the plaintiffs to conduct appropriate discovery and for a trial de novo to determine whether the plaintiffs met their burden of proving that the business pursuits exclusion bars coverage as a matter of fact. See *Nationwide Mutual Ins. Co.* v. *Pasiak*, 327 Conn. 225, 229–30, 270, 173 A.3d 888 (2017) (*Pasiak I*). Following a trial de novo, the trial court found that the plaintiffs satisfied their burden of establishing, by a preponderance of the evidence, that the false imprisonment arose out of the defendant's business pursuits and that the business pursuits exclusion bars coverage. The trial court rendered judgment for the plaintiffs, concluding that they have no obligation to indemnify the defendant. The defendant now appeals from that judgment, claiming, among other things, that the trial court applied an incorrect standard on remand.

Our decision in *Pasiak I*, as supplemented by the facts found by the trial court in the trial de novo, sets forth the following relevant facts and procedural history. See id., 230–37. The defendant owned Pasiak Construction Services, LLC (Pasiak Construction), which had its sole office in the defendant's home in Stamford. The Pasiak Construction office was a room on the second floor of the home, across the hall from the defendant's bedroom and next to a bathroom. The office had three desks, including a computer workstation. The defendant maintained a homeowners insurance policy and an umbrella insurance policy through the plaintiffs at the time of the incident. He did not hold any commercial liability insurance for his business. Pasiak Construction employed Sara Socci as a part-time office manager with working hours of 9:30 a.m. to 2:30 p.m., four days per week. Socci worked out of the office in the defendant's home and would help with both the

defendant's business tasks and personal tasks. Socci worked exclusively for the defendant, whom she considered to be her boss. The defendant would regularly stop by the office to work with Socci in the morning. One day in May, 2006, Socci was working at her desk when an individual entered the office wearing a mask and carrying a gun. The individual demanded that Socci show him to the defendant's safe and open it. Socci had no knowledge of the safe or its combination. The individual became enraged, and he bound, gagged, and blindfolded Socci and forced her down on the floor of the bedroom. He put a gun to her head and told her he would kill her and her family if she did not open the safe.

After the individual made approximately forty-five minutes of continuous threats, the defendant returned home and was attacked by the individual at the top of the stairs. The defendant was eventually able to unmask the individual, revealing his identity to be Richard Kotulsky, a longtime friend of the defendant. When the defendant asked about Socci's whereabouts, Kotulsky led him to the bedroom, where the defendant made Kotulsky untie Socci. Kotulsky and the defendant went into the office, and the defendant insisted that Socci join them, notwithstanding her reluctance because of Kotulsky's threats. Socci joined them in the office, where a discussion revealed that Kotulsky was motivated to rob the defendant because he was upset with the defendant for his purported affair with Kotulsky's girlfriend and because he needed money to cover his debts. The defendant was upset that Kotulsky tried to rob him and, in his words, "tried to ruin his business." The defendant and Kotulsky reached some degree of resolution of their dispute and spoke amicably.

Despite Socci's requests to leave, the defendant prevented her from leaving. Kotulsky begged Socci and the defendant not to call the police. The defendant asked Kotulsky to leave the room, and Socci informed the defendant of the extent of Kotulsky's threats to her and her family. The defendant continued to refuse to let Socci leave or to call the police. The defendant brought Kotulsky back into the room, where Kotulsky apologized to Socci, and Socci then assured him she would not tell the police about the incident. Kotulsky then left. Following Kotulsky's exit, Socci resigned from Pasiak Construction and informed the defendant that she could no longer work for him because she was terrified that Kotulsky would return. The defendant remained fearful that Socci would call the police and that Kotulsky would be harmed by his arrest. Socci testified that she remembered the defendant having been worried about her ruining his business. Socci testified that she did not try to leave because she was afraid that the defendant would tell Kotulsky and that Kotulsky would harm her and her family. The trial court also noted that she felt intimidated because the defendant and Kotulsky were each twice as large as she was.

The defendant and Socci eventually decided to talk to Denise Taranto, who was a former coworker of Socci and a close friend of the defendant. Socci left her belongings in the defendant's home, and the two traveled in the defendant's car to meet with Taranto in Greenwich. Along the way to Greenwich, Socci and the defendant stopped at a donut shop and a material supply yard. At the supply yard, the defendant spoke with several of the yard's employees for a few minutes. The two also drove by several construction sites that Pasiak Construction was serving. Upon their arrival in Greenwich, Taranto came out to the defendant's car and spoke with Socci and the defendant. After learning of the events that transpired, Taranto advised the defendant and Socci to call the police. The defendant and Socci then returned to the defendant's home, where Socci gathered her belongings and returned home. Socci's experience, from arrival at work to departure, approximated her regular work schedule, and she was paid in full by Pasiak Construction for that pay period. Socci, her husband, and a friend later returned to the defendant's home, at which point the defendant called the police.

After being charged with kidnapping in the second degree and witness tampering, the defendant pleaded guilty under the *Alford* doctrine[2] to charges of interfering with an officer and threatening in the second degree. Socci and her husband subsequently commenced a tort action against the defendant, alleging false imprisonment, negligence, intentional, reckless and negligent infliction of emotional distress, and loss of consortium. The plaintiffs provided the defendant with an attorney to defend him in the Socci action but notified him that they were reserving their right to contest coverage.

The plaintiffs then commenced the present action, seeking a declaration that they had no duty to defend or indemnify the defendant in the Socci action. The trial court concluded, by way of summary judgment, that the allegations of the complaint were sufficiently broad to obligate the plaintiffs to provide the defendant with a defense under his homeowners and umbrella insurance policies, but the court deemed it improper, at that juncture, to determine the plaintiffs' duty to indemnify.

Socci and the defendant proceeded to trial in the tort action, in which the jury awarded Socci $628,200 in compensatory damages and $175,000 in punitive damages. The jury also awarded Socci's husband $32,500 in compensatory damages. The plaintiffs then filed a second motion for summary judgment in the declaratory judgment action regarding their duty to indemnify the defendant. The plaintiffs argued, among other things, that the defendant's policies did not cover his liability for the Socci action because coverage was barred under the policy exclusion for business pursuits.

The plaintiffs also claimed that indemnification for the punitive damages contravened public policy.

The trial court thereafter issued its memorandum of decision. Relevant to this appeal, the court concluded that the plaintiffs were entitled to summary judgment under the homeowners insurance policy—which did not cover injury for emotional distress unless caused by a physical injury—but not under the umbrella insurance policy—which covered "personal injury," defined to include false imprisonment. It also rejected the plaintiffs' public policy argument.

After the trial court clarified that its decision on the motion for summary judgment was not a final judgment for purposes of appeal, a dispute arose over the scope of the evidence and discovery that would be allowed in the declaratory judgment trial. The plaintiffs claimed that they were entitled to a trial de novo regarding the issue of indemnification, with no limitation as to the evidence that could be proffered, and the defendant contended that the trial must be limited to evidence from the underlying Socci action. The court disagreed with the plaintiffs and denied their request to permit unrestricted evidence.[3]

The declaratory judgment action proceeded to trial with documentary evidence submitted to the court, largely originating from the Socci action, with some additional matters related to workers' compensation. The trial court issued a decision and rendered judgment for the defendant, requiring the plaintiffs to indemnify the defendant for his liability in the Socci action. The decision rested on the same reasoning as the trial court's previous denial of the plaintiffs' motion for summary judgment on the issue. The plaintiffs appealed from the trial court's judgment to the Appellate Court, challenging, among other things, the trial court's determinations regarding the policy exclusions. See *Nationwide Mutual Ins. Co.* v. *Pasiak*, supra, 161 Conn. App. 88–89, 95. The Appellate Court reversed the judgment of the trial court and concluded that the court incorrectly had determined that the business pursuits exclusion of the umbrella insurance policy did not apply. See id., 89, 101–102. The defendant thereafter appealed to this court, which concluded that both the trial court and the Appellate Court applied incorrect standards for determining whether the business pursuits exclusion barred coverage. *Pasiak I*, supra, 327 Conn. 252. We also concluded that the plaintiffs were not limited to the evidentiary record of the underlying tort action to establish that the business pursuits exclusion barred coverage. Id., 230, 270. Accordingly, we reversed the judgment of the Appellate Court with direction to remand the case to the trial court for a trial de novo on the business pursuits exclusion issue. Id.

On remand, the parties engaged in discovery, and the trial court conducted a trial de novo with an expanded

evidentiary record.[4] In its memorandum of decision, the trial court explained that, in light of this court's decision in *Pasiak I*, its task was "to engage in a flexible fact-specific inquiry to determine if the [plaintiffs] satisfied [their] burden of [proving] that the false imprisonment or Socci's injury in this case was connected with, had its origins in, grew out of, flowed from, or was incident to [the defendant's] business pursuits." (Internal quotation marks omitted.) See *Pasiak I*, supra, 327 Conn. 243–44. The trial court concluded that the plaintiffs satisfied their burden by a preponderance of the evidence. This appeal followed.

I

We begin with the defendant's principal contention that the trial court applied an incorrect standard when it determined that the plaintiffs satisfied their burden of proving, by a preponderance of the evidence, that the business pursuits exclusion barred coverage. Rather than applying the preponderance of the evidence standard, the defendant contends, the trial court should have construed the business pursuits exclusion in favor of the insured unless it had "a high degree of certainty that the policy language clearly and unambiguously excludes the claim." The plaintiffs disagree and argue that the defendant misconstrues this court's holding in *Pasiak I* and what this court directed the trial court to do on remand. The plaintiffs contend that, in *Pasiak I*, this court construed the language of the policy and clarified the applicable standard for determining whether Socci's injuries arose out of the defendant's business pursuits. The plaintiffs further contend that we then directed the trial court to make factual determinations on remand as to whether Socci's injuries met this standard. In short, the plaintiffs argue that the defendant conflates the tasks of construing the policy, which this court did in *Pasiak I*, with making the factual determinations necessary to ascertain whether the exclusion unambiguously applied under the circumstances of this case, which the trial court did on remand. We agree with the plaintiffs.

"[The] analysis of whether the [trial] court applied the correct legal standard is a question of law subject to plenary review." (Internal quotation marks omitted.) *United Public Service Employees Union, Cops Local 062* v. *Hamden*, 209 Conn. App. 116, 123, 267 A.3d 239 (2021); see also, e.g., *Adams* v. *State*, 259 Conn. 831, 837, 792 A.2d 809 (2002). When an incorrect legal standard is applied, the appropriate remedy is to reverse the judgment of the trial court and to remand the case for further proceedings. See, e.g., *In re Zakai F.*, 336 Conn. 272, 306–307, 255 A.3d 767 (2020); *St. Joseph's Living Center, Inc.* v. *Windham*, 290 Conn. 695, 765, 966 A.2d 188 (2009) (*Schaller, J.*, concurring in part and dissenting in part).

We begin by emphasizing the distinction between the

standard of proof in a civil trial and the interpretive presumptions we apply to insurance contracts. The standard of proof ordinarily refers to "the degree of certainty by which the [fact finder] must be persuaded of a factual conclusion to find in favor of the party bearing the burden of persuasion." *Microsoft Corp.* v. *i4i Ltd. Partnership*, 564 U.S. 91, 100 n.4, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011). An interpretive presumption, by contrast, is a rule we apply to help determine what a text—in this case, an insurance contract—means. The interpretation of an insurance contract is "a question of law," not a matter of fact. (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, 333 Conn. 343, 364, 216 A.3d 629 (2019). The interpretive presumption at issue requires the court to construe any ambiguity in the language of an insurance policy against the insurance company, as the drafter of the contract. See, e.g., *Israel* v. *State Farm Mutual Automobile Ins. Co.*, 259 Conn. 503, 508, 789 A.2d 974 (2002). This rule is also known as contra proferentem. See, e.g., id., 509; see also, e.g., *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, supra, 365. As we will explain, an exclusion will generally be interpreted against the insurance company unless the court has a "high degree of certainty that the policy language clearly and unambiguously excludes the claim." (Internal quotation marks omitted.) *Connecticut Ins. Guaranty Assn.* v. *Drown*, 314 Conn. 161, 188, 101 A.3d 200 (2014). The defendant has conflated these two distinct concepts.

With this distinction in mind, we turn to our decision in *Pasiak I*. In parts II and III of our opinion, titled "Insurance Policy and Its Construction" and "Business Pursuits Exclusion," respectively, we construed the business pursuits exclusion contained in the defendant's umbrella insurance policy. *Pasiak I*, supra, 327 Conn. 237–54. We began by noting that "no one questions that the activities of [Pasiak Construction] meet the two elements of a business pursuit. Nor does anyone contend that false imprisonment constitutes a business pursuit. Therefore, the question is not whether the false imprisonment itself satisfied the continuity/profit elements of a business pursuit, as the trial court's rationale suggested, but, rather, whether the defendant's false imprisonment of Socci 'arose out of' his business pursuits in operating [Pasiak Construction]." Id., 243.

We went on to state that the general meaning of "arising out of" is well established and explained that, in *Hogle* v. *Hogle*, 167 Conn. 572, 577, 356 A.2d 172 (1975), this court concluded that "it is sufficient to show only that the accident or injury was connected with, had its origins in, grew out of, flowed from, or was incident to the [specified subject] in order to meet the requirement that there be a causal relationship between the accident or injury and the [subject]." (Internal quotation marks omitted.) *Pasiak I*, supra, 327 Conn. 244.

We also noted that this definition of "arising out of" is "expansive," and it underscores "that it is less demanding than the standard for proximate cause." (Internal quotation marks omitted.) Id. Finally, we also recognized that this expansive definition applies both to provisions that afford coverage and those that exclude coverage, including the business pursuits exclusion. Id., 245.

Of course, as we noted in *Pasiak I*, "[o]ur case law construing the phrase 'arising out of' offers useful, but limited, guidance" for determining whether the exclusion applies in a particular case. Id., 246. We therefore went on to discuss the kind of facts that would need to be found for the exclusion to clearly and unambiguously apply in the specific context of this case. See id., 246–52. We observed that "the question of whether the defendant's false imprisonment of Socci was connected with, had its origins in, grew out of, flowed from, or was incident to his business pursuits would . . . be a factual matter." Id., 245; see also, e.g., *Kolomiets* v. *Syncor International Corp.*, 252 Conn. 261, 265, 746 A.2d 743 (2000) (in context of workers' compensation claim, whether injury arose out of employment considered as matter of fact); *Whitney Frocks, Inc.* v. *Jobrack*, 135 Conn. 529, 534, 66 A.2d 607 (1949) ("the question [of] whether . . . the transaction arose out of the business for which the corporation was organized was a question of fact for the jury to decide").

In light of the foregoing, we concluded that it was "clear that neither the trial court nor the Appellate Court applied the proper standard for 'arising out of' a business pursuit." *Pasiak I*, supra, 327 Conn. 252. We explained that "*further factual findings would be necessary* to determine whether this exception applies under the correct standard." (Emphasis added.) Id., 229–30. With respect to the trial court's analysis, we explained that its "continuity and profit motive test conflated the test for determining whether a business pursuit exists with the one for determining whether the act giving rise to the injury arose out of such a pursuit." Id., 252. Although the trial court's approach was too restrictive, we explained that "the Appellate Court's was too expansive. The Appellate Court's 'but for' approach relied too heavily on Socci's employment status and the work based location at which she sustained the injury. We agree with the Appellate Court that the requisite standard could be met if, in addition to these facts, the false imprisonment was a function of, or facilitated by, the employer-employee relationship. . . . However, this is a factual finding on which the trial court expressed no view." (Citation omitted.) Id., 254.

In footnote 12 of *Pasiak I*, we enumerated certain evidence that may be probative of whether Socci's injury "arose out of" the defendant's business pursuits. We stated: "Socci's testimony reflects numerous addi-

tional facts on which the trial court's decision is silent. For example, Kotulsky was targeting Socci's 'boss.' Because Socci was a new employee, the defendant periodically stopped by the office to see whether Socci had any questions. After the incident, the defendant anxiously and repeatedly expressed a concern to Socci that Kotulsky's actions would 'ruin' his business, and did so as part of a two-pronged argument as to why she should not report the incident to the police. When she told the defendant that she wanted to leave the office, he told her, '[i]t's business as usual.' Although Socci was too distraught to perform any of her usual tasks, she viewed her presence in acquiescence to the defendant's demands as having 'worked all day.' When [the defendant] and Socci left the office to meet with Taranto to discuss the incident, the defendant directed Socci to leave her personal effects at the office. The defendant stopped at a construction site on the way to the meeting with Taranto and spoke with two workers there. Socci announced to the defendant that she could no longer work for him, and he relayed that concern to Taranto when the three met. Taranto was instrumental in Socci's hiring and training, and she was intimately involved in the defendant's business affairs. Socci and Taranto knew each other from having previously worked for the same employer for several years, but [they] never had any relationship outside of work. The defendant allowed Socci to leave close to the time that her normal workday was scheduled to end."[5] Id., 253 n.12.

Accordingly, we concluded that "we [could not] say on the basis of the limited facts found by the trial court or the evidentiary record whether the business pursuits exclusion applies as a matter of law. There was additional evidence in the Socci action relating to the matter raised by the Appellate Court on which the trial court made no findings, which that court may consider on remand. . . . We express no view as to whether the [trial] court must credit this evidence or the weight that such evidence should be given if the court elects to credit it." (Citation omitted.) Id., 254. Therefore, we remanded the case and directed that "the plaintiffs are entitled to appropriate discovery and a trial de novo to determine whether they have met their burden of proving that the business pursuits exclusion bars coverage." Id., 270.

In sum, in *Pasiak I*, we construed the relevant policy language in the defendant's umbrella insurance policy, explained the specific factual circumstances in which the language would or would not unambiguously apply, and directed the trial court on remand to conduct a trial de novo to determine, as a factual matter, whether the plaintiffs satisfied their burden of proving that this policy language bars coverage.

Recognizing that this court had construed the relevant policy language in *Pasiak I*, the trial court correctly

noted that its task on remand was "to engage in a flexible fact-specific inquiry to determine if the [plaintiffs] satisfied [their] burden of [proving] that the false imprisonment or Socci's injury in this case was connected with, had its origins in, grew out of, flowed from, or was incident to [the defendant's] business pursuits." (Internal quotation marks omitted.) As a result, the trial court rejected the defendant's contention that a heightened standard should apply, explaining that it was "not called [on] to construe the exclusion. The Supreme Court has already done so. Rather, the court is applying the high court's construction to the facts of the case. Accordingly, the court finds that [the plaintiffs] must satisfy [their] burden of proof by a preponderance of the evidence."

It is well settled that "the general rule [is] that when a civil statute is silent as to the applicable standard of proof, the preponderance of the evidence standard governs factual determinations required by that statute." (Internal quotation marks omitted.) *Stuart* v. *Stuart*, 297 Conn. 26, 38, 996 A.2d 259 (2010); see also, e.g., *State* v. *Davis*, 229 Conn. 285, 295–96, 641 A.2d 370 (1994). General Statutes § 52-29 governs claims for declaratory relief. See General Statutes § 52-29 (a); see also Practice Book §§ 17-54 and 17-55. Neither § 52-29 nor any of the other authorities governing declaratory judgment actions contain a heightened standard of proof. Because a declaratory judgment action is an ordinary civil action, without a heightened standard of proof required by the statute, it is subject to the preponderance of the evidence standard. See, e.g., *State* v. *Davis*, supra, 295–96. Accordingly, we conclude that the trial court properly applied the preponderance of the evidence standard to determine the factual question of whether the plaintiffs established that the business pursuits exclusion barred coverage.

The defendant nevertheless contends that a heightened standard is appropriate given our statement in *Pasiak I* that, "[w]hen construing exclusion clauses, the language should be construed in favor of the insured unless [the court] has a high degree of certainty that the policy language clearly and unambiguously excludes the claim." (Internal quotation marks omitted.) *Pasiak I*, supra, 327 Conn. 239, quoting *Connecticut Ins. Guaranty Assn.* v. *Drown*, supra, 314 Conn. 188. This "high degree of certainty" language, however, has its origins in decisions from this court construing language contained in insurance policies. See, e.g., *Kelly* v. *Figueiredo*, 223 Conn. 31, 37, 610 A.2d 1296 (1992) ("The exclusion clause [in the insurance policy] is not ambiguous. . . . We can say with a high degree of certainty that the exclusion clause was intended to exclude all assaults and batteries from coverage." (Citation omitted.)); *Griswold* v. *Union Labor Life Ins. Co.*, 186 Conn. 507, 514, 442 A.2d 920 (1982) ("We cannot say that the clause in question is clear and unambiguous. Upon reading

the anti-duplication clause as it has been written by the authors of the contract, we cannot say with any degree of certainty whether it was intended to exclude not only [money] or benefits actually received but also those capable of being received under any coverage required or provided by any statute or no-fault insurance policy."). The "high degree of certainty" standard applies only when construing language in a policy; it does not apply when a trial court is determining, as a factual matter, whether a party has met its burden of establishing that the policy exclusion unambiguously applies. Indeed, the defendant has not cited a single case that requires the application of a "high degree of certainty" standard when a court makes a factual determination as to whether the facts of a case satisfy language in an insurance policy. Because, as we explained, this court has construed the relevant policy language in *Pasiak I*,[6] the trial court correctly determined that the application of a heightened standard on remand was not appropriate. The defendant's argument conflates the legal standard for construction of a policy exclusion and the burden of proof to be applied in a declaratory judgment action to determine whether, as a factual matter, a policy exclusion applies.

We emphasize the unusual procedural posture of this case. There was no need for the trial court, on remand, to apply the "high degree of certainty" standard or other principles of insurance contract interpretation, such as contra proferentem. This court had already interpreted the business pursuits exclusion in *Pasiak I* and specified the factual situations in which that exclusion would clearly and unambiguously apply. Normally, there will not be a prior adjudication, as in this case, that has determined whether an insurance contract is ambiguous or how it should be interpreted in a particular factual setting. We have held that "[c]ontext is often central to the way in which policy language is applied; the same language may be found [to be] both ambiguous and unambiguous as applied to different facts. . . . Language in an insurance contract, therefore, must be construed in the circumstances of [a particular] case . . . and cannot be found to be ambiguous [or unambiguous] in the abstract." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Lexington Ins. Co.* v. *Lexington Healthcare Group, Inc.*, 311 Conn. 29, 41–42, 84 A.3d 1167 (2014). This case is unusual in the sense that we have already interpreted the relevant policy language in the specific factual context that defines the dispute between the parties. This distinctive procedural posture meant that the trial court, on remand, was not required to reinterpret the contract and, therefore, had no need to apply the usual interpretive presumptions. Indeed, the history of this case illustrates the point. Before this case reached this court in *Pasiak I*, the trial court had construed the relevant policy language in the first instance. On appeal, the Appellate

Court disagreed with the trial court's interpretation. See *Nationwide Mutual Ins. Co.* v. *Pasiak*, supra, 161 Conn. App. 100–101. Finally, when the case reached this court, we explained that neither the trial court's nor the Appellate Court's interpretation was correct. See *Pasiak I*, supra, 327 Conn. 252. Although we disagreed with its construction, it was nevertheless proper for the trial court in *Pasiak I* to have engaged in interpreting the insurance policy in the specific factual context of the case, applying all interpretive principles applicable to insurance contracts, including, when appropriate, contra proferentem.

## II

The defendant also raises a number of claims relating to whether the trial court correctly determined that the plaintiffs had carried their burden of proof. Specifically, the defendant claims that (1) the trial court erred when it found in the plaintiffs' favor after they failed to produce new, credible evidence that was not raised during the first trial, (2) the trial court erred in failing to find the defendant's evidence, in the form of contemporaneous witness statements made on the day of the incident, to be the most credible and reliable form of evidence in the record, (3) the trial court's conclusion that Kotulsky's actions constituted an attack on Pasiak Construction is unsupported by any evidence in the record, and (4) the trial court improperly found in the plaintiffs' favor on public policy grounds.

On the basis of our examination of the record and the briefs, and our consideration of the arguments of the parties, we conclude that the defendant's remaining claims are without merit, and the judgment of the trial court should be affirmed. Specifically, we conclude that (1) the trial court did not err when it found in the plaintiffs' favor on the basis that they failed to produce new, credible evidence that was not raised during the first trial, (2) with respect to the second and third claims, the record, viewed as a whole, contains evidence that supports the factual findings of the trial court, and (3) the public policy discussion in the trial court's memorandum of decision was not essential to the trial court's determination of the case and is, therefore, dictum.[7] Because these claims are particular to the facts of this case and do not raise significant legal questions, extensive discussion of these claims would serve no useful purpose. Cf. *Office of Chief Disciplinary Counsel* v. *Miller*, 335 Conn. 474, 479–80, 239 A.3d 288 (2020) (because trial court properly resolved remaining claims, "[i]t would serve no useful purpose . . . to repeat the discussion contained [in the trial court's memorandum of decision]").

## CONCLUSION

The trial court properly applied the preponderance of the evidence standard at the trial de novo to deter-

mine the factual question of whether the plaintiffs established that the business pursuits exclusion of the umbrella insurance policy barred coverage. The defendant's argument to the contrary conflates the legal standard for construction of a policy exclusion and the burden of proof to be applied in a declaratory judgment action to determine whether, as a factual matter, a policy exclusion applies.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The complaint in the declaratory judgment action also named Pasiak Construction Services, LLC, the company owned and operated by Pasiak, and Sara Socci and her husband, the plaintiffs in the underlying tort action, as defendants. The claims in the present action arise under an insurance policy issued to Pasiak as the sole policyholder, and Socci and her husband have not participated in this appeal. Accordingly, in the interest of simplicity, we refer to Pasiak throughout this opinion as the defendant.

[2] *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[3] The trial court did, however, permit the parties to obtain limited discovery related to the workers' compensation exclusion in the policy but concluded that the remaining evidence would be limited to that from the Socci action.

[4] Specifically, at the trial de novo, the parties entered the following exhibits into evidence: exhibit A—the defendant's umbrella insurance policy; exhibit B—pleadings from the underlying action; exhibit C—transcripts of the 2010 trial in the underlying action; exhibit D—the transcript of the defendant's May 12, 2009 deposition; exhibit E—the transcript of the defendant's November 19, 2009 deposition; exhibit F—the transcript of the defendant's August 29, 2012 deposition; exhibit G—the transcript of the defendant's January 15, 2019 deposition; exhibit H—the transcript of the June 16 and 17, 2008 prejudgment remedy hearing; exhibit I—the transcript of Socci's October 19, 2009 deposition; exhibit J—the transcript of Socci's December 3, 2009 deposition; exhibit K—the transcript of Taranto's July 28, 2009 deposition; exhibit L—the defendant's May 9, 2006 voluntary statement to the Stamford Police Department; exhibit M—Socci's May 9, 2006 voluntary statement to the Stamford Police Department; exhibit N—Socci's May 31, 2006 voluntary statement to the Stamford Police Department; and exhibit O—Socci's April 23, 2008 affidavit in support of her application for a prejudgment remedy.

[5] We also provided the trial court additional guidance regarding our construction of the business pursuits exclusion, noting that, "[a]lthough broadly construed, this court's application of ['arising out of'] indicates that the requisite causal nexus would not be met merely by a sequential relationship between the injury and the business pursuit. . . . Accordingly, this case law makes clear that the mere fact that the false imprisonment occurred after Socci arrived at her workplace would not, in and of itself, establish the requisite nexus." (Citations omitted.) *Pasiak I*, supra, 327 Conn. 246–47. We noted, however, that "the purpose of the activity or action giving rise to the liability, in connection with other employment related facts, may support the requisite causal nexus. Altercations causing bodily injury and even death have been deemed to arise from a business pursuit when the dispute giving rise to the action was business related." Id., 248. "The mere fact that a dual social and business purpose exists will not, in and of itself, take the activity outside the scope of the exclusion." Id., 250. Additionally, we explained that, "even when no business purpose reasonably could motivate or be furthered by the action, use of the employment relationship or status to effectuate the harmful act may provide the requisite causal connection." Id.

[6] We emphasize that this court did not conclude that the business pursuits exclusion or the "arising out of" language was ambiguous. Rather, we explained that the meaning of "arising out of" is "well established . . . ." (Internal quotation marks omitted.) *Pasiak I*, supra, 327 Conn. 244; see also *Hogle* v. *Hogle*, supra, 167 Conn. 577.

[7] Although we conclude that the trial court's public policy discussion was dictum, we take this opportunity to emphasize the purpose of the business pursuits exclusion as it relates to different lines of insurance coverage. "As a means of limiting the coverage afforded by the liability insurance policies they sell, many insurance companies include in such policies a provision

known as the 'business pursuits' exclusion." G. Locke, "Avoiding the 'Business Pursuits' Exclusion—Insured's Activity as Not Business Pursuit," 15 Am. Jur. Proof of Facts 3d 515, 521, § 1 (1992). "The purpose of a 'business pursuits' exclusion is to help the insurer keep premiums at a reasonable level by eliminating a type of coverage that (1) normally requires specialized underwriting and rating, (2) is not essential to most purchasers of the policy, and (3) is provided by other insurance contracts a business owner is likely to have. The need for insurance companies to keep business liability coverage separate from personal liability coverage, and to maintain separate underwriting and rating for each, arose in part from the vastly different premises liability exposures that historically existed in the home and business settings. Traditionally, a homeowner was required only to refrain from intentionally injuring social guests and to warn such guests of any hidden dangers he or she might reasonably expect them to encounter. By contrast, a business owner owed his or her invitees a duty to maintain the premises in [a] safe condition and to protect the invitees from injury by reason of any defects that were known or, in the exercise of reasonable care, should have been known. Even with the common-law distinctions between social guests and business invitees now blurred or eliminated in many jurisdictions, insurers remain interested in excluding from their general liability coverage the increased risk attendant on the traffic that a place of business normally generates, and a 'business pursuits' provision allows them to accomplish this." (Footnotes omitted.) Id., p. 522. Accordingly, although the language of the particular insurance policy and the facts of the situation will always govern the coverage question, it is important to remember that personal liability insurance policies and commercial insurance policies contemplate different risks and, therefore, afford different coverage at difference premiums.

———————————————